VERNON B. WARD ET AL., APPELLANTS, v. CONSOLIDATED SCHOOL DISTRICT NO. 136 OF NODAWAY COUNTY, RESPONDENTS.—16 S. W. (2d) 598.

Kansas City Court of Appeals. April 29, 1929.

*A. M. Tibbels, A. F. Harvey* and *Shinabarger, Blagg & Sigler* for appellants.

*Cook & Cummins* and *Randall Wilson* for respondents.

LEE, C.—This is an appeal by certain taxpayers of Consolidated School District No. 136 in Nodaway county, Missouri, from a judgment in favor of defendants in the Nodaway county circuit court in a suit to enjoin said school district from holding an election to vote on the school bond issue and from selling said bonds, and to declare invalid a change of boundary lines.

Consolidated School District No. 136 (commonly known as the Skidmore district, from the town of Skidmore therein), comprising about forty-seven sections of land in said county, was organized as a consolidated school district in June, 1921. Consolidated School District No. 162 (commonly known as the Graham district, from the town of Graham therein) adjoins it on the southeast.

On April 5, 1927, an election was held in said districts under the provisions of Revised Statutes Missouri, 1919, section 11201, to detach territory approximately the equivalent of four sections of land from the Skidmore district and attach it to the Graham district. At this election the vote in district No. 136 (exclusive of the detached area) was 319 to 228 in favor of the change in boundaries; in the detached district the vote was twenty-eight to six against the change,

and in the Graham district No. 162 the vote was ninety-one to two against the change. After the election an appeal was taken by the school board of the Skidmore district No. 136 to the superintendent of schools, in accordance with Revised Statutes Missouri, 1919, section 11201. The superintendent of schools appointed a board of arbitrators, in accordance with the statute, which board conducted a public hearing on the subject on April 18th, and handed down its decision, ordering the change, and on April 23d the county superintendent accordingly gave notice thereof to the districts involved.

On May 10, 1927, the board of education of the Skidmore district No. 136 adopted a resolution calling for an election to vote a $75,000 bond issue, for the erection and equipment of a school building, and the secretary was directed to post the required notices for the election to be held on May 28th.

This suit was brought by certain taxpayers of said district No. 136, on behalf of themselves and other taxpayers similarly situated, to declare the boundary election void and to enjoin the bond election. The defendants are the two school districts, their members and secretaries, the judges of election, the county superintendent and the board of arbitrators. In their petition plaintiffs allege that the boundary election was void, as having been brought about for the fraudulent purpose of eliminating voters opposed to the desired bond issue; that the appeal to the county superintendent and the board of arbitrators and the order of the latter confirming the boundary change were void for the further reason that a petition for the change was not properly filed in District No. 162, and that the notice of election in the latter district did not designate the polling place.

As to the proposed bond election, the petition alleged as ground for enjoining it that, pursuant to the conspiracy and design of said board of education of District No. 136, many qualified voters would be prevented from voting; that unlawful and increased taxes would be levied, and further, that they were causing the election to be held without proper notice.

The answer puts in issue the various matters in controversy, alleging various facts in support of the regularity of the proceedings, and the reply is a general denial. Upon trial of the cause the court, on June 13, 1927, found the issues for the defendants, and denied the relief prayed for. From this judgment plaintiffs took their appeal to the Supreme Court, which on June 21, 1928, held that jurisdiction of the appeal rested in the Kansas City Court of Appeals, to which the case was accordingly transferred.

Appellants allege six assignments of error, which may be considered in order.

1. The first is that the court erred in not finding that the change of boundaries was fraudulent, against public policy, arbitrary and unlawful, for the alleged reason that the change was made for the

mere factional purpose of disfranchising forty or fifty legal voters, and enabling those left to vote a bond issue.

There is no claim or evidence that the election itself was not fairly conducted in accordance with the law. The only fraud alleged is that of the motive of those who sought the change. To sustain this allegation the clerk of Consolidated School District No. 136, who was shown to have prepared the petition, was examined as to his motives in fixing the boundaries as he did. This was irrelevant. The signers of the petition are not bound by the motives of the clerk, which are not imputable to them. Neither can their own motives be subject to impeachment by the courts, if their procedure was in accordance with the law. The petition merely formed the basis for calling the election, at which the voters of the district were free to cast their votes *pro* or *con* on the question of the boundary change; each according to his own conscience, without having his motives subject to question by any man.

The rule asserted as applicable by appellants, that the acts of boards and municipal bodies, unlike those of the legislature in its governmental functions, are subject to review by the courts, is not in point here. The school board here followed the general law in calling an election when a petition in due form was presented to them; and it was not their act, but that of the independent voters, which decided on the change.

2. The second assignment of error is that the change was in violation of the provisions of Revised Statutes 1919, section 11201, as being "for revenue only" and "simply for the acquisition of territory."

In view of the fact that the initiative for and the favorable vote in favor of the change was in District 136, which is losing territory and revenue, and that District No. 162, which is gaining both territory and revenue, voted against the change, this assignment cannot be held to be well-founded.

3. The appeal to the county superintendent and the hearing before the board of arbitrators appointed by him appear to have been strictly in accordance with the law under section 11201. The arbitrators were disinterested taxpayers of the county, nonresidents of the school districts affected. All the testimony is that the hearing was openly and fairly conducted, with an opportunity and "equal chance" given to all interested parties to be heard. No complaint is made as to the fairness or integrity of the arbitrators. At the trial of this case plaintiffs sought to show by the testimony of parties present at the appeal hearing that the chief or only ground alleged before the arbitrators by proponents of the change was their desire to exclude certain voters unfavorable to a bond issue for a new school house. This evidence, which was admitted over the objection of respondents, was met by counter-evidence as to the motives of those

who opposed the change. Whatever their views and motives, these participants at the hearing spoke only their individual opinions; and in the absence of any record purporting to be a complete transcript of the procedings before the board of arbitrators, their findings must be presumed to have been based upon proper grounds and honestly arrived at. By the statute it is provided that their decision shall be final.

4. But appellants contend that the board of arbitrators had no jurisdiction of the case because, they allege, the school board of the Graham district did not, in their notice of the election, designate any place for the election, as required by Revised Statutes 1919, section 11251, which provides as follows:

"*Regulations governing elections at annual meetings.* The qualified voters of such town, city or consolidated school district shall vote by ballot upon all questions provided by law for submission at the annual school meetings, and such election shall be held on the first Tuesday in April of each year, and at such convenient place within the district as the board may designate."

The notice of this election on change of boundary, as published in District No. 162, recited:

"That at the annual election of said school district to be held on Tuesday, the fifth day of April, 1927, beginning at 7 o'clock A. M. and closing at 6 o'clock P. M., of said day, the following proposition will be voted upon: To change the boundaries," etc.—

It is true that no place is designated in this notice. However, this notice did not purport to be calling a special election, but merely that "at the annual election" on the date named the boundary question will be voted upon. Section 11201, as to changing boundaries, says nothing about the place of the election nor about any action by the board. It merely provides that upon receipt of a proper petition it shall be the duty of the *district clerk* to post a notice fifteen days prior to the annual meeting. Section 11251, on the holding of annual elections, provides that the annual meeting "shall be held on the first Tuesday in April of each year." This is not discretionary with the school board, whose duties are only to designate a place and to appoint judges of election. It does not specify that notices shall be posted. The minutes of the board of District No. 162 (the district acquiring territory), which are somewhat informal, do not clearly show the action of the board specifically designating a place; but they do show the appointment of judges of election. The record shows that a largely attended election was actually held, that the results were recorded, and a minute made of the reorganization of the board with the newly elected members. In view of these facts, and in the absence of any showing or claim that any voters were misled or deprived of their votes, we must assume that the board did in fact designate the place at which the election was actually held; and

that the omission of the place from the posted notice was not a violation of the statute, and was not prejudicial and did not affect the validity of the notice. The record shows that there were more votes cast on the boundary proposition than on any of the usual and regular propositions submitted to the annual election, as to the school year, the election of directors and the tax levy. It appears that the election was held at the place usual for ten years past, and there was affirmative testimony that no complaint had been heard from any one of being deprived of his vote. It is to be noted, also, that the vote in District No. 162, as cast, was heavily against the proposition. All that was necessary to prevent the immediate taking effect of the change, and to force an appeal by its proponents to the county superintendent, was a majority vote against it in the district; so that no possible number of additional votes, if there were any in the district, would have changed the result in that respect.

In 9 R. C. L. 992, it is stated:

"It is clear that since an entire failure to give the special notice required by a statute does not necessarily avoid a general election, an imperfect or defective notice which does not mislead electors so that they lose the right to exercise their franchise, certainly will not do so. And it is equally clear in the case of special elections wherein the necessity for notice is so much more urgent, that the rule as to compliance with statutory requirements in the giving of notice should be much more strictly enforced. Considerable liberality is, however, allowed even in these elections and it is a rule of pronounced authority that the particular form and manner pointed out by a statute for giving notice is not essential, provided, however, there has been a substantial compliance with statutory provisions. Following this rule it has been held that where the great body of the electors have actual notice of the time and place of holding the election, and of the questions submitted, this is sufficient; and so the formalities of giving notice, although prescribed by statute, are frequently considered directory merely in the absence of an express declaration that the election shall be void unless the formalities are observed."

In the case of O'Laughlin v. Kirkwood, 107 Mo. App. 302, 81 S. W. 512, the court said:

"The important inquiry in this connection is whether time and opportunity to ascertain the polling places were afforded the voters of Kirkwood. This inquiry is answered by the finding of the circuit judge that the vote cast was unusually large, showing that the citizens knew where to vote. . . .

"We feel justified in view of the very large vote, in holding that Ordinance No. 211 was valid and gave the voters sufficient notice of the polling places. In a small town voters have no difficulty in learning where polling places are, unless the polls are concealed or the

voters misled; and it is not asserted that either of those things was done in this instance.''

And in 20 Corpus Juris, p. 97, it is said:

''But failure to give the statutory notice will not of itself invalidate a special election if the time of holding the same is fixed by law, or where it appears that the electors were in fact informed of the time, place and purpose of the election and generally voted for the candidates or upon the questions submitted; or where it appears that no different result was possible had all the voters participated in the election.''

5. The validity of the boundary election is challenged because separate petitions were not filed with the secretary of the board of education of each district. The evidence shows that the original petition was filed with the secretary of District No. 136, who made and retained a true copy thereof, and then, under authority of an order of record by his board, delivered the original to the secretary of District No. 162, who receipted for same.

Section 11201 of the statutes provides that:

''It shall be the duty of the district clerk of each district affected, upon the reception of a petition desiring such change, and signed by ten qualified voters residing in any district affected thereby, to post a notice'' etc.

There is no requirement in the statute that separate petitions be signed and filed; and we hold that the procedure followed in this case was sufficient.

6. The appellants also attack the sufficiency of the notices for the proposed bond election. It appears that typewritten forms of notice were prepared by the secretary of the school board for a bond election in April; but before using them the board decided upon a later date, on Saturday, May 28, 1927. Thereupon the secretary erased the original dates on these notices and typed in the new dates and posted them as thus changed. At the trial three of these notices were introduced in evidence, on which the dates were blank, except a slight trace in some places of the original dates. The testimony was that at the time they were taken down for evidence they had been exposed to the weather. The secretary of the board testified that all the notices were carefully checked before posting, and correctly recited the new dates.

Whether the alleged irregularity of a proposed bond election can form the basis for anticipatory equitable relief, rather than to await the result and attack the validity of any bonds voted, we do not need to decide. If a bond election is still desired by the district it will now be necessary to have new notices thereof; and the question of the validity of the old ones is therefore moot.

Finding no error in the case, the finding and judgment of the trial court should be affirmed. *Barnett, C.,* concurs.

1146

PER CURIAM:—The foregoing opinion by LEE, C., is approved and adopted as the opinion of the court. The finding and judgment of the trial court are accordingly affirmed. *Bland* and *Arnold, JJ.*, concur; *Trimble, P. J.*, absent.