JOHN WOOD v. CITY OF ST. JOSEPH, MISSOURI.—186 S. W. (2d) 212.

Kansas City Court of Appeals. January 22, 1945.

*Bart M. Lockwood, Charles H. Mayer* and *Joseph M. Garvey* for appellant.

1214

*Strop & Strop* for respondent.

BLAND, P. J.—This is an action for the recovery of a salary. The case was tried before the court, without the aid of a jury, resulting in a judgment in favor of the plaintiff in the sum of $230. Defendant has appealed.

The facts show that plaintiff was employed by the defendant, the City of St. Joseph, a city of the first class, as a fireman. He sues to recover for salary covering eleven and one-half months' services, at the rate which he claims he is entitled to have his salary computed in accordance with a wage increase voted by the people of St. Joseph at an election held on April 7, 1942.

The City Council, on January 20, 1942, passed a general ordinance No. 3048 fixing a schedule of salaries of the officers and employees of the city. The firemen were divided into twelve classes. Their salaries differed in 11 instances. Plaintiff claims that this ordinance was amended by virtue of an initiative proposal submitted at the regular general City election of the City held on April 7, 1942, which proposal received an affirmative vote of 10,820 in favor to 3,455 against.

An initiative petition, containing the required numbers of signatures, was duly and regularly filed with the city clerk of the defendant, according to law and, under the provisions of Section 6572, Revised Statutes Missouri, 1939, it was the duty of the City Council to either enact the proposal (in the form of an amendment to general ordinance No. 3048, insofar as it affected the salaries of the city firemen) or to submit it to a vote of the people. The Council took no action on the matter, except to instruct the city clerk to submit the issue to

the people at an election to be held on April 7, 1942. The amended ordinance or proposal was so submitted, with the result as above stated.

It is insisted by the defendant that the court erred in rendering judgment for the plaintiff, for the reason, among others, that there was no notice of any character given of the submission of the amended ordinance or proposal; that the proposal was never published, as required by Section 6572, Revised Statutes Missouri, 1939. Said section provides for the publication of such a proposal by the city clerk and that it "be published once in each of the daily newspapers published in said city; such publication to be not more than twenty or less than five days before the submission of such proposition or ordinance to be voted on." No such proposal was ever published at any time.

Section 6572, Revised Statutes Missouri, 1939, also, provides that the submission of the petition "shall be the same as provided for herein for petitions in case of the recall of any elective officer;" and Section 6569, relating to the recall of officers provides that the "election (denominated therein as a special election) shall be held and conducted in all respects as other city elections are held under the laws of this state." Section 6253 provides: "The Mayor shall, by proclamation, give seven days' public notice of the time and place of any general or special election by publication in at least two of the daily newspapers of the city, one of which shall be the official paper of the city, if there be one." No effort was made to comply with this provision of the statute. The mayor, in his proclamation, which was published in accordance with law for the holding, on April 7, 1942, of a general election, gave notice that there would be a general election held on that day merely for the election of municipal officers as follows: Mayor, City Treasurer, City Auditor, Police Judge, Five members of the Common Council, Three Directors of the School District of St. Joseph, Missouri. No mention is made of the proposal in controversy.

The only notice that the voters had that the proposition would be submitted, if such can be denominated a notice, was the publication of the official ballot in two daily newspapers, in general circulation in the City of St. Joseph, on the 2nd and 6th days of April, 1942. This ballot is headed: "OFFICIAL BALLOT, April 7, 1942." Then appears three parallel columns; one headed "Democratic Party," another "Republican Party," and the third "Independent Party." In each of the Democratic and Republican columns the names of the candidates for the office of Mayor, City Treasurer, City Auditor, Police Judge and five members of the City Council appear. On the Independent ticket only the name of the candidate on that ticket for mayor appears. At the bottom of each of the Democratic and Republican tickets appear the words "FOR THE ORDINANCE to

Increase Salaries of Members of Fire Department." In a space immediately below the same appear the words "AGAINST THE ORDINANCE to Increase Salaries of Members of Fire Department." There is nothing appearing on the Independent Party Ticket concerning the ordinance. At the bottom of the ballot appear the words: "INSTRUCTIONS TO VOTERS." Then follows instructions as to how to vote a straight party ticket and a split ticket. No instruction is contained therein as to how to .vote for or against the ordinance in question.

It is held, in this state, that where a special matter, such as the proposal in ·question, is submitted at a general election, so far as the submission of the special matter is concerned, is to be treated as though it is being submitted at a special election and that the law authorizing its submission must be strictly followed; that the giving of notice to the public of the time and place of the election is "jurisdictional," and that the election is void unless such notice is given strictly in accordance with the statute if the statute prescribes the method in which the notice should be given. [State ex rel. v. Martin, 83 Mo. App. 55; State ex rel. v. Ross, et al., 160 Mo. App. 682; State ex rel. v. Franklin, et al., 283 S. W. 712; State ex rel. v. Tucker, 32 Mo. App. 620; State ex rel. v. Reid, 134 Mo. App. 582; State ex rel. v. Johnson County Court, 138 Mo. App. 427; 2 McQuillin Municipal Corps. (2 Ed.), pp. 797, 798; Southworth, et al. v. Mayor of Glasgow, 232 Mo. 108, 123.]

As before stated, no effort was made to comply with either Section 6572, relative to the publication of the proposition, nor with Section 6253, concerning notice, by publication, in two daily newspapers, of the mayor's proclamation calling for the election. The publishing of the proposition, itself, is for the purpose of giving the widest publicity to the proposal. [Palmberg v. Kinney (Ore.), 132 Pac. 538; In re House Resolution No. 10, 114 Pac. 293, 295, (Colo.).]

While Section 6572 provides that the ballot used in initiative elections shall contain merely the words " 'FOR THE ORDINANCE' (stating the nature of the proposed ordinance) and 'AGAINST THE ORDINANCE' (stating the nature of the proposed ordinance)" and the ballot, published and used in the election in question contains these words, yet, Section 6572 contemplates that, before the day of the election the ordinance or proposition be published, in full, in each of the daily newspapers, such publication to be not more than twenty or less than five days before the submission of such proposition or ordinance to be voted on. Evidently it was the purpose of the legislature to make provision for the voters to obtain full knowledge of the contents of the ordinance and to provide sufficient time for them to study the proposition so that they might cast an intelligent vote upon it. Under such circumstances when the voters go to the poles they have sufficient information as to the proposition to be voted

upon so that it is merely necessary to have the ballot indicate whether an affirmative or negative vote is being cast by the voter. The few words appearing on the ballot, itself, are not intended to inform the voters as to the contents of the ordinance or proposition being voted upon.

The publication, in this case, of the ballot, if it can be construed as any notice of the election whatever (of course, it did not comply with the statute) was not published 7 days before the election, as required by Section 6253, but the first publication was 6 days before the election. In addition to this, the notice (if any) obtained from the ballot, was defective, in that, it would indicate that only those voting the Democratic or Republican ticket would be entitled to vote on the proposed amendment to the ordinance. No instruction was given as to how one voting the Independent ticket could vote for or against the proposition. In fact, there was no instruction whatever relative to voting on the proposition. As to notice of the time and place of a special election, it was held in State ex rel. v. Ross, et al., *supra*, l. c. 693:

"To the general proposition that time and place are of the substance of an election we give our unqualified assent, and if the statute in terms required the polling places to be designated in the order the election, or the notice of the election, we should hold such a provision mandatory, and an election held without this provision being complied with void. As we view it, the things upon which jurisdiction to hold such an election as this rests are, a proper petition, an order for the election and notice of the election. If all of these are insubstantial compliance with the statute, then jurisdiction attaches and up to this point all specific provisions of the statute should be held mandatory and a substantial compliance with its terms required."

There are some requirements in the statute relating to the submission of propositions of this kind, which are merely directory, as far as the public is concerned, although mandatory upon the officer or officers whose duty it is to take the prescribed steps for the submission of the proposition. It is the rule that, after the election is held, and it appears that there has been a fair expression, in favor of the proposition, by the people, compliance with the requirements is looked upon with greater liberality than prior to the election and, if a substantial compliance with the law relative to notice is given, the election will be upheld.

In State ex rel. Kemper v. Carter, 165 S. W. 773, it was held that an election could not be invalidated because the Secretary of State did not forthwith and immediately, upon the filing of an referendum petition, actually count the names to ascertain if there were a sufficient number as required by law, but at the time merely examined it in a general and supervisory way and delayed the actual counting until a later date, and because the Attorney General did not, within 10 days, submit a title for the measure, as required by the statute, since the

constitutional provision for a referendum is self-executing, and the statute passed in aid thereof, though mandatory as to the officials upon whom duties are enjoined, in that compliance may be compelled by the courts, yet, as to the rights of the people, they are mandatory. It will be noted that in that case the question of notice of the time and place of he election was not involved. There is quite a difference between the failure of an official to perform some minor act preparatory to the submission of the proposition to be voted upon by the people and the giving of the notice of the time and place of the submission, which latter, as before stated, is jurisdictional, and without which the election is void.

Plaintiff cites the case of Hildreth v. Taylor (Ark.), 175 S. W. 40. In that case it was held that there was substantial compliance with the law relating to the submission of a constitutional amendment by the initiative. The law provided that the Secretary of State should publish, in one newspaper in each county of the state, the amendment to the constitution to be voted upon by the people at the next general election; that the publication should be for 30 days; that the Secretary of State furnish the Attorney General with a copy of the amendment and, within 10 days thereof, the Attorney General should return to the said Secretary of State a ballot title for the measure. Petitions were filed and referred to the Attorney General in such time that if he took the full number of days allowed him it left only seven days before the date of the publication, during which time the Secretary of State would have had to mail out the copy for the printer, and it would have to be set up by the latter before the date of the publication. As a result, the Secretary of State did not mail out the copies in time to publish them within the time required by law, except in two counties. In the other counties the publications were three to thirteen days late. It was held that there was a substantial compliance with the law relating to publication, under the peculiar facts in that case. The facts in that case are entirely different from those in the case at bar for, as before stated, there was no effort made to comply with Section 6253 relative to the publication of the notice of the election. There was, not only, no substantial compliance but none whatever.

The total vote on the office of mayor was 20184 of which the Republican and Democratic candidates received a total of 15991. It is claimed that because the ordinance received a number of affirmative votes equal to more than one-half of those cast for all three candidates for mayor, it appears that, even if the votes cast for the Independent candidate for mayor were all against the proposition, nevertheless, it would have carried by a substantial margin. While the evidence shows the combined vote for all of the candidates for mayor, it does not show the number of qualified voters in the City of St. Joseph on the date of the election. Voters often go to the poles for the purpose of voting for or against a single candidate or proposition and for no

other purpose.  It is a matter of speculation as to whether those qualified voters who did not vote would have voted had they known of the full import of the proposal to be voted upon or how to vote upon it.  However, it would appear that the ordinance received a substantial affirmative vote but, even if the majority of the qualified voters were for its adoption, it would make no difference, for the reason, as before stated, the giving of the statutory notice was jurisdictional and no valid election could have been held without it.  [See cases last cited, on this point, *supra*; also, City of Newport v. Glazier (Ky.), 194 S. W. 771; Coffee v. Lieb (Tex.), 107 S. W. (2d) 406, 410; Town of Cortlandt v. Village of Peekskill (N. Y.), 24 N. E. (2d) 139; State ex rel. Fleek v. Dalles City, et al. (Ore.), 143 Pac. 1127; Reed v. Wing (Calif.), 144 Pac. 964, 966; Staples v. City of Astoria, 158 Pac. (Ore.) 518; Wright v. City of McMinnville (Ore.), 117 Pac. 298.]

It appears that, after the election, the Common Council received a communication from the city clerk certifying the result of the election, verified by the Canvassing Board, and the Council passed a resolution increasing the salaries of the firemen, in accordance with the vote of the people.  In view of this fact, and the fact that the city did nothing before the election in the way of contesting the validity of the proposed amendment to general ordinance No. 3048, or the election, plaintiff claims that the city is estopped to contend that the ordinance was not legally adopted by the people.  There is no merit in this contention.  [State v. McBride, 4 Mo. 303; 2 McQuillin on Municipal Corporations (2 Ed.), p. 798.]

The judgment is reversed.  All concur.