243 S.W.2d 344 (1951)
STATE ex Inf. STIPP, Pros. Atty., ex rel. STOKES MOUND SCHOOL DIST. NO. 7 et al.
v.
COLLIVER et al.
No. 42386.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
*346 Nolan M. Chapman, Don Chapman, and Nolan M. Chapman, Jr., all of Chillicothe, for appellants.
W. A. Franken, D. D. Thomas, Jr., Carrollton, for respondents.
DALTON, Judge.
Action in quo warranto instituted in the Circuit Court of Carroll County by Christian F. Stipp, Prosecuting Attorney of that county, at the relation of certain taxpaying citizens and others, to determine the validity of the proceedings leading to the alleged organization of Reorganized School District R-II of Tina, Carroll County, Missouri, and to oust from the offices of director those purporting to act in such capacity for the alleged reorganized school district. The trial court heard the evidence and ruled (1) that the election held on November 1, 1949 for the purpose of consolidating some fourteen common school districts of that county into Reorganized School District R-II of Carroll County was null and void; (2) that no legal organization was effected and no such district existed; (3) that respondents in said cause were unlawfully usurping and holding their respective offices as directors of the purported district; and (4) that they should be ousted from exercising any powers as such directors of said district. Respondents below have appealed.
The consolidation of the several common school districts involved was sought to be effected under the provisions of Senate Bill 307, Laws of Missouri, 1947, p. 370, now sections 165.657 to 165.707, RSMo 1949. This court has jurisdiction of the appeal since the proceeding involves "title to any office under this state". Art. V, Sec. 3, Constitution of Missouri 1945; State ex rel. Gentry v. Sullivan, 320 Mo. 362, 8 S.W.2d 616, 617.
A county board of education for Carroll County was duly elected and organized as provided by Sec. 165.657 and Sec. 165.660. It made a comprehensive study of the *347 school needs of Carroll County and submitted to the state board of education a specific plan for the reorganization of the school districts of the county. Sec. 165.673. The plan was rejected. Thereafter, a second or revised plan was submitted to the state board of education, which plan was also rejected. The county board of education, thereupon, on October 13, 1949, voted to submit its own plan for reorganization to the voters of the county to be voted upon on the first Tuesday in November, 1949, the date specified in Sec. 165.677. The plan agreed upon provided for eight areas or enlarged school districts, among them "R-II Tina," including fourteen specified common school districts listed by their popular names, that is, the names by which they were known, but not according to their legal designation and number.
The secretary's minutes of the meeting of October 13, 1949, failed to show that any voting place in the R-II area was designated by the board, or that judges and clerks for the proposed election were appointed, but it was shown by oral testimony that the board in fact designated the Community Hall in the Tina district as the place for holding the election in the proposed enlarged school district R-II, and named the judges and clerks for such election. Sec. 165.680. It was admitted that the proposed Reorganized School District R-II contained more than $500,000.00 in assessed valuation of property and had more than 100 pupils in average daily attendance during the preceding year. Sec. 165.677.
The secretary of the county board of education prepared a notice of election for the election to be held for the purpose of voting upon the proposed plan on Tuesday, November 1, 1949. The president and secretary of the said board signed a stencil from which mimeograph copies of the notice of election were made. The notice was titled, "School Meeting Notice to Form Enlarged School District." It referred to the provisions of Senate Bill No. 307, gave notice of the election and its purpose, named the designated voting place and gave its location, mentioned the date and hours for voting and listed the existing school districts proposed to be included in the enlarged school district. The names of the President and Secretary of the County Board of Education appear above the names of their respective offices at the bottom of the notice. The notice of election was duly published on October 15 and October 22, 1949 in the Carrollton Daily Democrat, a daily newspaper published at Carrollton in Carroll County. Sec. 165.680. Three or more copies of the mimeographed notice of election were posted in public places more than six days before the proposed election in eight of the common school districts affected by the proposal, but in the other districts either less than three notices were posted or the notices or some of them were not posted more than six days before the election. See State ex rel. Reorganized School Dist. v. Holmes, 360 Mo. 904, 231 S.W.2d 185, 192(11). In one district no notices were posted. The county board of education supplied ballots, poll books and all materials for the said election. Sec. 165.680.
On November 1, 1949 (the first Tuesday in November of that year) the alleged election was held at the Community Hall in Tina, and within the confines of the proposed enlarged school district R-II. The judges and clerks of said election were duly sworn, acted as such and made return to the county board of education showing that 411 votes were cast at said election of which votes 258 were cast in favor of the plan of reorganization submitted and 153 votes against the plan. The secretary of the county board of education certified of the state board of education the results of the election as to the proposed enlarged school district. Sec. 165.683. Thereafter, the county board of education called an election in said district for the purpose of electing six directors of such enlarged district. The six respondents below, appellants here, were duly elected and qualified as directors of the said enlarged district (assuming, of course, that Reorganized School District R-II was legally organized). Sec. 165.687. It is admitted that the individuals on behalf of whom this action is brought were residents and taxpayers in one of the common school *348 districts proposed to be included in the reorganized district.
The trial court held that the alleged election, at which the plan for reorganization of the specific common school districts was claimed to have been adopted and Reorganized School District No. R-II created, "was null and void because of the insufficiency of the designation of the component parts of said district, and because of the insufficiency of the notices of election and the posting thereof * * * and that said School District R-II has never been organized into a legal School District."
Section 165.680 provides " * * * The notices of such election shall be by written or printed notices, signed by the president and secretary of the county board of education. Such notices shall be posted in at least three public places within each school district affected by the proposal and shall also be published at least two times in at least one newspaper of general circulation in the county or counties affected by said proposed enlarged district, the last published notice not less than six days prior to the date of election."
The essential question presented upon this appeal is whether the provisions of Sec. 165.680 with reference to notice, particularly the provisions as to the number of notices to be posted in each of the several common school districts to be affected by the proposal and the time when said notices are required to be posted before the election, are mandatory or directory with reference to any election required to be held "on the first Tuesday in November, 1949" and for the purpose stated in Sec. 165.677. Appellants contend the provisions are directory only, while respondents contend that "the failure to post the notices required * * * renders the election void." Respondents insist that three copies of the notice must be posted at least six days before the election in each school district sought to be incorporated in the reorganized school district; that the notice must also be published in a newspaper; and that giving the notice in the newspaper only is insufficient and renders the election void.
The statutes in question evidence an intention on the part of the Legislature that plans for the reorganization of school districts should be prepared and submitted as therein provided; and that the Legislature considered the matter of reorganization urgent and the time factor essential. Sec. 165.657 required each county super-intendent of schools, within sixty days after Sections 165.657 to 165.707 take effect, to call a meeting of the members of the boards of various school districts in his county to elect a county board of education of six members. Section 165.660 required the organization of such county board within four days after its election. Section 165.673 required the county board of education to prepare a plan of reorganization of school districts of the county within six months after the organization of the board and to submit such specific plan for reorganization to the state board of education not later than May 1, 1949.
Section 165.677 required the state board of education to approve or disapprove the plan within sixty days following its receipt. In case of disapproval the county board was required to submit a revised plan of reorganization to the state board within sixty days. If the revised plan was disapproved by the state board the county board was "required to propose and submit its own plan to the voters on the first Tuesday in November, 1949". Not later than three days after any such election the secretary of the county board of education was required to certify to the state board the results of the election in each proposed enlarged district. Sec. 165.683.
It is admitted that two plans for reorganization were submitted to the state board of education and disapproved and it appears that the county board of education proposed and undertook to submit its own plan to the voters on the first Tuesday in November, 1949." The proof shows that, in attempted compliance with Sec. 165.680, the county board of education did select and designate the voting place in the proposed enlarged school district R-II and appointed the necessary judges and clerks and provided the required ballots. It is admitted that, if in fact "the election was properly *349 called and convened," 411 votes were cast in the election in R-II at the Tina Community Hall on November 1, 1949, with 258 votes favoring reorganization and 153 against; and that, assuming the first election was valid and R-II validly organized, the second election, wherein appellants were elected directors of the Reorganized District, was valid.
Section 165.680 expressly provided that, "Within sixty days after receipt of approval by the state board of education of the reorganization plan, the secretary of the county board of education shall call an election in each proposed enlarged * * * district * * *." (Italics ours.) Section 165.677 provided that, if the revised plan submitted to the state board was disapproved, "the county board of education is hereby required to propose and submit its own plan to the voters" on the specified date, to-wit, on the first Tuesday in November, 1949; and that, "such plan shall be submitted to the qualified voters, as herein provided, in the same manner as if the plans had been approved by the state board of education."
As stated, the record in this case shows that two plans for reorganization had been submitted to and disapproved by the state board; and that, thereafter, the county board of education proposed and ordered submitted its own plan for reorganization to the voters as required by the statute. While the record shows that the county board of education voted to submit its own plan for reorganization to the voters to be voted upon on the first Tuesday in November, 1949, neither the county board, nor its secretary, undertook to call an election on that date. The time for, and the purpose of, the election were fixed by Section 165.677. In view of the facts of this case an election on that date to pass upon the proposed plan of reorganization was mandatory. The right and duty to hold the election was derived from the statute and not from any call for, or notice of, such election. Since the time for, and purpose of, the election were fixed by law, all were bound to take notice of what the law required.
In 18 American Jurisprudence 250, Elections, § 112 it is said: "The prevailing view seems to be that where the date of an election is not left to the determination of officials, but is unequivocally fixed by statute, the provision is regarded as mandatory and the election officials have no authority to change the date." And see 29 C.J.S., Elections, § 77, p. 102.
It is argued by respondents that, in this case, the time of the election is not fixed by statute, but is made conditional (1) upon the agreement of the county board to adopt a plan of reorganization; (2) upon the rejection of that plan and a revised plan by the state board of education; and (3) upon the final agreement of the county board to submit its own plan. These conditions, however, had happened, the statute applied and the election was required by law on the specified date. People v. Cowles, 13 N.Y. 350.
The rule is that "time and place * * * are of the substance of every election, and failure to comply with the law in these particulars is not generally to be treated as a mere irregularity." Cooley on Constitutional Limitations, Eighth Edition, Vol. II, p. 1399; State ex rel. Fahrman v. Ross, 160 Mo.App. 682, 693, 143 S.W. 502. It is essential to the validity of an election that the voters have notice thereof in some form, either actual or constructive. 29 C.J.S., Elections, § 72, p. 95. "Where, however, both the time and the place of an election are prescribed by law, every voter has a right to take notice of the law, and to deposit his ballot at the time and place appointed, notwithstanding the officer, whose duty it is to give notice of the election, has failed in that duty. The notice to be thus given is only additional to that which the statute itself gives, and is prescribed for the purpose of greater publicity; but the right to hold the election comes from the statute, and not from the official notice." Cooley on Constitutional Limitations, Eighth Edition, Vol. II, p. 1372; 29 C.J.S., Elections, § 72, p. 95; 18 Am.Jur. 243, Elections, Sec. 101; Adsit v. Osmun, 84 Mich. 420, 425, 48 N.W. 31, 11 A.L.R. 534.
*350 It is apparent that Sec. 165.680 does not state what information "The notices of such election" shall contain. Compare State v. St Louis, Kansas City & Northern R. Co., 75 Mo. 526, dealing with a statute requiring "notice to be given of the time and place of holding such election or elections, and the purpose for which it is held," and State ex rel. Fahrman v. Ross, supra, 160 Mo.App. 682, 692, 143 S.W. 502, where the statute with reference to the notice of election contained no such requirement. While Sec. 165.680 requires the county board of education to "select and designate the voting place or places in each proposed enlarged school district", it does not specifically require such designation prior to the posting of the notices of election, nor does it specifically require that the notices of election contain a statement of the designated polling place or places in the proposed enlarged district. See State ex rel. Fahrman v. Ross, supra, 160 Mo.App. 682, 696, 143 S.W. 502. The matter with reference to the designation of polling places appears in the section after the provision with reference to the posting and publication of the notices of election. The two matters are not specifically related to each other by any statement contained in the section itself. Section 165.680, however, did not fix the polling place or places for such election in the R-II district. It did require the county board of education to select and designate the voting place or places in each proposed enlarged school district. The county board of education did select and designate, as the polling place for the R-II, the Community Hall in the Tina district, which location was within the proposed enlarged district R-II; and the alleged election was conducted at the designated place.
Respondents argue that there would be no way for the voters to find out what common school districts were included within the proposed reorganized district except by the notice; and that a school district might be in any of several different groupings, according to the action of the county board of education. The statute, however, did not expressly require that the essential features of the plan of reorganization should be set forth in the notice of election. The question presented is whether the posting of the notices in accordance with the provisions of Sec. 165.680 was jurisdictional and determinative of the right to hold the election. Did the validity of the election rest upon the statute requiring it, of which statute all must take notice, or did such validity rest upon a proper calling of the election by some duly authorized officer or agency and the giving of such notice of election as the statute required? Respondents further argue that this was a special election and so it was. "Where, as is usually the case in special elections, the time and place for holding the same are not fixed by law but are to be fixed by some authority named in the statute after the happening of a condition precedent, the statutes as to giving notice thereof are considered mandatory, and failure to give notice or issue proclamation of such an election will render it a nullity; and this is especially true when it appears that such failure has prevented the electors generally from participating in such election." 29 C.J.S., Elections, § 72, p. 96. In this case the time for the special election was fixed by law, the law applied to this district and the general rule applicable to special elections does not apply.
Further, the same rules with reference to notice of the time of an election are not always applied to notice of the place for holding the election, when the word "place" is used in the sense or meaning of "polling place," rather than as indicating the district, city or subdivision where the election is held. Using the word "place" in the latter meaning, the statute did, in view of the facts shown, fix the time, place and purpose of the election but, as stated, it did not fix the "polling place" in the R-II district.
There is authority for the proposition that the jurisdiction or right to hold a special election rests upon a proper call or order for an election by the designated authority and notice of the election, that is, without such notice of election designating therein the location of the polling places *351 where the statute itself does not designate the date for holding the election, or require the notice of election to designate the polling place. The rule is stated in State ex rel. Fahrman v. Ross, supra, 160 Mo.App. 682, 693, 696, 143 S.W. 502, 505, as follows: "As we view it, the things upon which jurisdiction to hold such an election as this rests are a proper petition, an order for the election, and notice of the election. If all these are in substantial compliance with the statute, then jurisdiction attaches, and up to this point all specific provisions of the statute should be held mandatory, and a substantial compliance with its terms required. * * * The jurisdictional notice in elections of this kind is the notice of the election which gives the date on which the election is to be held, and names the place by naming the county or city in which it is to be held."
While there is some authority otherwise, the general rule seems to be that the designation of the time for the election, its purpose and the district in which it is to be held are the essential factors in determining the validity of the election, rather than the giving of notice of the polling place in the particular district.
State ex rel. Maffett v. Turnbull, 212 Minn. 382, 3 N.W.2d 674, 676(1) states the general rule as follows: "Where the statute designates the time when an election shall be held, no notice or call is necessary to authorize the holding of the election."
In 29 C.J.S., Elections, § 72, p. 96, it is said: "However, failure to give the statutory notice will not of itself invalidate a special election if the time of holding the same is fixed by law, or where it appears that the electors were in fact informed of the time, place, and purpose of the election and generally voted for the candidates or upon the questions submitted; or where it appears that no different result was possible had all the voters participated in the election."
In 18 Am.Jur. 245, Elections, Sec. 106 it is said that, "As to general elections it is established that the fixing of the time for the election either by law or by the Constitution is in itself notice which all electors must heed; and hence, where an officer is charged with the duty of giving notice of such an election or with the issuing of a proclamation thereof, his failure to perform his duty will not invalidate the election."
It is pointed out in 18 Am.Jur. 247, Elections, Sec. 108, that "the decisions vary as to the essential character of a requirement that the place be specified. Some courts hold that a statute requiring that the notice state the place of the election is not satisfied unless the polling places are designated, while others place a different interpretation upon the same requirement."
In the case of Ward v. Consolidated School Dist., 225 Mo.App. 1139, 16 S.W.2d 598, 601 it was held that failure of a school board of a district acquiring territory to designate in the notice of a boundary election the polling place for said election was insufficient to deprive a board of arbitrators of jurisdiction when the matter reached them. In that case the notice of election did state that the question of changing boundaries would be voted on at the annual election, which was held at the usual place and largely attended, and there was no showing that any of the voters were misled or deprived of their votes. It was assumed that the school board did in fact designate the polling place for the election, but the failure to designate the polling place in the notice of the election was not considered fatal on the issue of the right to hold the election. And see, O'Laughlin v. Kirkwood, 107 Mo.App. 302, 318, 81 S.W. 512.
Respondents rely upon the following cases. State ex rel. City of Berkeley v. Holmes, 358 Mo. 1237, 219 S.W.2d 650; State ex inf. Latham ex rel. Dawes v. Allen, 361 Mo. 963, 237 S.W.2d 489, 490; State ex inf. Burges ex rel. Marbut v. Potter, Mo.Sup., 191 S.W. 57, 59; Wood v. City of St. Joseph, 238 Mo.App. 1212, 186 S.W.2d 212; Young v. Brassfield, Mo.App., 228 S.W.2d 823. These cases follow the general rules stated in 18 Am.Jur., Elections, Secs. 101 and 102 as follows: "If *352 * * * the time and place of an election are not fixed by law, but the election is only to be called and the time and place to be fixed by some authority prescribed by law after the happening of some condition precedent, it is essential to the validity of the election that it be called and the time and place fixed by the agency designated, and by no other. * * * Where * * the time for holding an election is not prescribed by law, but is fixed by the officer or body vested with authority to call it, the voters cannot be expected to have or to take notice thereof unless notice is given or a proclamation is issued. Accordingly, a requirement to this effect must be considered as mandatory and its performance essential to the validity of the election." Since the cases relied upon by respondents only support the above general rules, which we do not consider applicable under the facts of this case, it will not be necessary to review the cases further.
In construing the statute in question here, we think it is clear that the statute was applicable under the facts shown and required the election at the specified time, for the specified purpose and in this particular district; that the statute called and authorized the election for the purpose stated; that no other call or notice was necessary to authorize the election; and that any failure to post the required notice of the election would not invalidate the election on the record presented.
Appellants have further urged that the formalities of giving notice of election as prescribed by Sec. 165.680 are merely directory because there is no declaration in the statutes that such an election shall be void unless the notice is given as provided. State ex inf. McAllister ex rel. Lincoln v. Byrd, 295 Mo. 344, 244 S.W. 938; Ex parte Brown, Mo.App., 297 S.W. 445, 447; Horsefall v. School Dist. of City of Salem, 143 Mo.App. 541, 545, 128 S.W. 33; Ward v. Consolidated School Dist. supra; Hudgins v. Mooresville Cons. School Dist., 312 Mo. 1, 278 S.W. 769, 770; 18 Am.Jur. 248, Elections, Sec. 110. In view of our conclusion, on other grounds that the statute with reference to notice is only directory when applied to the particular election in question, to-wit, to one held on the date named in the statute, we need not determine the merits of this contention.
The cause was brought and tried, and was here presented, upon the theory that the provisions of Sec. 165.680, with reference to the posting of the three notices not less than six days prior to the election in at least three public places within each school district affected by the proposal, was a jurisdictional and mandatory requirement. Respondents have insisted that, since the provisions of the statute as to notice were not substantially complied with, the election was void regardless of any newspaper publications, as provided by statute, and regardless of the fact that the voters may have had actual knowledge of the time, place and purpose of the election, as was pleaded and sought to be proven by appellants. In the trial below no issue was presented as to whether the want of the statutory notice of election resulted in depriving any voters of their right to exercise their franchise or that they failed to vote on account of lack of knowledge of the polling place designated by the county board of education in the proposed R-II district. Nor was it charged that the failure to comply with the statutory requirement as to notice was due to fraud or bad faith or resulted in depriving a sufficient number of voters of the opportunity to exercise their franchise to change the result of the election. In such situation our holding that the statute itself supplied the authority for the election, and that failure to give the statutory notice was not jurisdictional, disposes of the case. It will, therefore, be unnecessary to rule as to the sufficiency of the notice by reason of the failure to use the legal names and numbers of the common school districts to be included in the consolidated or reorganized district, or to rule as to the sufficiency of the printed or mimeographed signatures of the president and secretary to the notices. There was no charge that any one was misled thereby. Only the legal sufficiency of the notice for jurisdictional purposes and to authorize the holding of the election was *353 presented, while we have held that the mandatory provisions of the statute requiring the election under the facts shown and on the particular date was sufficient notice to authorize the holding of a valid election.
The judgment should be reversed. It is so ordered.
All concur.