STATE of Missouri, ex inf. John M. DAL-
TON, Attorney General, ex rel. REORGAN-
IZED SCHOOL DISTRICT NO. 4, JACK-
SON COUNTY, Missouri, Relator,

v.

SCHOOL DISTRICT NO. 30 OF INDE-
PENDENCE, Missouri, a School
District, Respondent.

No. 47681.

Supreme Court of Missouri,

En Banc.

March 14, 1960.

V. E. Phillips, Kansas City, Elmer W.
Ahmann, Independence, Wayne A. Hire,
Blue Springs, for relator.

Rufus Burrus, Independence, for re-
spondent.

WESTHUES, Judge.

This is a quo warranto proceeding filed
in this court by John M. Dalton, Attorney
General of Missouri, at the relation of Re-
organized School District No. 4, Jackson
County, Missouri. The object of the pro-
ceeding is to determine whether respondent
School District No. 30 of Independence,
Missouri, has the right to exercise juris-
diction over certain territory formerly com-
prising Common School District No. 28 of
Jackson County, Missouri, which is claim-
ed by Reorganized School District No. 4
as a part of its territory (annexed thereto
in 1958).

We shall refer to Reorganized School
District No. 4 as No. R–4 or relator and
School District No. 30 of Independence as
No. 30 or respondent.

The pleadings and exhibits filed in the
case show the following: The territory
which comprised School District No. 28
is located northeast of No. 30 and north-
west of R–4. R–4 was organized in 1950
under Chapter 165, Sections 165.657–165.-
707, inclusive, V.A.M.S. No. 30 claims
about 95% of the territory of School Dis-
trict No. 28 on the basis of an election on
April 7, 1959, claimed to have been held
under the provisions of Section 165.294,
Laws of Mo.1955, p. 528, which prescribes
proceedings for change of boundaries be-
tween school districts. The petition re-
questing an election, signed by 17 voters
of No. R–4 and filed with the District Clerk

and Board of Education of No. R–4, read in part as follows (omitting caption): "We, the undersigned qualified voters of Reorganized District Number Four, County of Jackson, State of Missouri, desire the following changes in boundary lines: To change the northwesterly boundary of Reorganized District Number Four of Jackson County by relinquishing a portion of and diminishing said district by changing the northwesterly boundary lines and disjoining the following described area from said district and attaching same to the School District of Independence, said general area being formerly a major part of the Spring Branch School District Number 28, of Jackson County and described as follows: * * *."

Only a small tract of land of District No. 28 lying east of the Little Blue River was omitted from the above description. An election was held on April 7, 1959, with the result that in R–4 there were 1,242 who voted against and 673 who voted for the change. In No. 30, 1,053 voted against and 2,102 voted for the change. The County Superintendent of Schools thereupon, as provided for in Section 165.294, supra, selected a Board of Arbitrators which met and on April 25, 1959, made an award approving the change of boundary. The award, omitting captions and signatures, reads: "After listening to the arguments presented by both sides in the court room on second floor of Independence Court House the Board of Arbitration moved into the office of the County School Superintendent.

"After about an hour's deliberation and evaluation of the various arguments brought out on both sides, the following resolution was made:

"Mr. E. G. O'Flaherty moved that the board of arbitration place the contested territory in the Independence School District. Bob Barry seconded the motion. Motion carried 4–0.

"The principal reasons for such motion are:

"1. The heavily populated territory in the contested area can best be served by the Independence School District.

"2. The accrediting by the North Central Association of the Independence School system of K–6–6–AAA with 73 units of credit seemed to offset some of the arguments that were offered in favor of Blue Springs.

"3. Geographically the territory involved can best be served by the Independence School District as new homes are built and school enrollments increase."

Thereafter, on June 10, 1959, the present proceeding in quo warranto was filed.

Relator, in the brief, contends that a reorganized school district can be diminished in size only by approval of the County Board of Education and the State Board of Education. This contention is based on the theory that after the legislature amended Section 165.707, V.A.M.S., in 1955 (Laws 1955, p. 538), reorganized school districts' boundaries could no longer be changed under the provisions of Section 165.294, supra. Section 165.707, before the amendment, read:

"Disorganization and change of boundary lines

"Changes of boundary lines and disorganization of enlarged districts may be effected as now or hereafter provided by sections 165.263 to 165.373."

In 1955, the section was made to read:
Section "165.707. Disorganization, how effected

"Disorganization of enlarged districts may be effected as now or hereafter provided by sections 165.263 to 165.373."

It will be noted that the words "Changes of boundary lines and" were omitted by the amendment. This amendment is important, so says relator, because respondent District No. 30 relies upon Section 165.294, supra, as authority to change the boundary.

Relator further contends that respondent, under the guise of a change of boundaries, has taken substantial territory from R-4 which the law does not permit.

In the final point briefed by relator, it is said that in case arbitrators are appointed under Section 165.294, supra, the change of boundary must be necessary and the arbitrators, in order to approve the change, must determine that a necessity exists therefor.

Respondent relies upon Section 165.294, supra, as authorizing the procedure followed in this case. It is contended that the repeal of Section 165.707, supra, and its reenactment in its present form as above stated did not preclude a change of boundary of a reorganized school district. Respondent depends to a great extent on the opinion of this court in the case of England v. Eckley, 330 S.W.2d 738, which was transferred to this court from the St. Louis Court of Appeals. The opinion of the Court of Appeals is reported in 322 S.W. 2d 146. This court reached a different conclusion from that of the Court of Appeals and held that Section 165.294 authorized the contemplated change of boundary in that case. There the proposed change in boundary would enlarge a reorganized district by taking territory from a consolidated district. The case does not decide the point made by relator to the effect that a reorganized district may not be diminished by a change in boundary under Section 165.-294. The history of the statutory enactments pertaining to change of boundaries of school districts and annexation of territory may be found in the opinions of the Court of Appeals and of this court in the England case, supra. Those interested are referred to those opinions for a rather complete history.

We shall devote our attention to the Reorganization Law which became effective July 18, 1948 (Sections 165.657–165.707, inclusive, V.A.M.S., and amendments thereto). This law was declared to be constitutional in the case of State ex rel. Reorganized School Dist. No. 4 of Jackson County v. Holmes, 360 Mo. 904, 231 S.W.2d 185. In the case of State ex rel. Rogersville Reorganized School Dist. No. R-4 of Webster County v. Holmes, 363 Mo. 760, 253 S.W.2d 402, 403, this court en banc said of that law: "The reorganization law became effective July 18, 1948. Its purpose was to promote the rapid merger of the multitude of small, inadequately equipped and financed school districts of this State into fewer and larger districts with financial resources to provide adequate buildings, teaching staffs and equipment. To give impetus to the movement and to impress its urgency upon the officials charged with effectuating it, the act sets forth a time schedule within which each of the procedures therein provided is to be taken." Following that statement, the opinion briefly summarized the procedures outlined by the statutes for the reorganization of school districts. It is evident that the legislature thought there was an urgent need for reorganization. State ex inf. Stipp ex rel. Stokes Mound School Dist. No. 7 v. Colliver, Mo., 243 S.W.2d 344, loc. cit. 348(2). It is also apparent that it was the intent of the legislature that the State Board of Education and the County Board of Education of six members created by Section 165.657, amended in 1957 (V.A. M.S.1959 Pocket Part, p. 61), should have a voice in the proposed reorganization. Section 165.673 sets forth in detail the duties of the County Board and imposes upon the board the obligation of submitting to the State Board of Education a comprehensive plan of reorganization. V.A. M.S.1959 Pocket Part, p. 62. Section 165.-677, amended in 1955 (V.A.M.S.1959 Pocket Part, p. 63), places a duty upon the State Board of Education to examine the plan and either approve or disapprove such plan. If the plan is disapproved, the County Board may submit another plan and if such plan is rejected by the State Board, the County Board may submit its own plan to the voters. Such plan must meet the requirements prescribed in Section 165.677,

supra; State ex inf. Stipp ex rel. Stokes Mound School Dist. No. 7 v. Colliver, supra.

The legislature, by the above statutes (especially Sections 165.673 and 165.677), has required a most exhaustive study of the various factors affecting schools in preparing plans for reorganization. This responsibility was placed upon the shoulders of the State and County Boards of Education.

■ The vital question before us is whether, after the State and County Boards and the people of a district have completed and approved a reorganization, a reorganized district can be disrupted by a proceeding under Section 165.294, supra. If so, the disruption can be accomplished without the advice, consent, or approval of either the State or County Board of Education. Perhaps the legislature, as relator contends, attempted to prevent any such result by amending Section 165.707 in 1955 by striking therefrom the words "Changes of boundary lines and." However, as pointed out by this court en banc in the England case, supra, Section 165.294, authorizing changes in boundaries, was enacted that same year. That section plainly states that "any six-director elementary or high school district in the state" may proceed as therein provided to change boundaries. In 1959, the section was amended and as it now stands, it is all inclusive. See V.A.M.S. 1959 Pocket Part, p. 40. Note that it reads: "When it is necessary to change the boundary lines between two six directory elementary or high school districts or between a six director elementary or high school district and a common school district, ten per cent of the qualified voters * * * may petition the district boards of directors in the districts affected for a change in boundaries."

R-4 and No. 30 are both six-director districts. They are so classified by Section 165.010 as amended in 1955 (Laws 1955, p. 533; V.A.M.S.1959 Pocket Part, p. 18). In a footnote in the England case (330 S.

W.2d loc. cit. 743) this court said that Section 165.294, supra, was applicable to reorganized districts.

In the circumstances, we cannot say, as relator contends, that the legislature did not intend to include reorganized districts in Section 165.294. The legislature may well take note of this and if it so desires, amend the law. Our duty is to interpret the law, not to enact laws.

That Section 165.294 has been used by reorganized districts may be learned from the case of State ex rel. Dahm v. Goodin, Mo.App., 295 S.W.2d 600, which was a mandamus action to compel the holding of an election on the question of a change of boundary. The facts stated in the opinion disclose that the two reorganized districts were attempting to take territory from each other under the provisions of Section 165.294. The court there held the statute applicable.

In fairness to all parties to this litigation, we call attention to a fact which is obvious from the above statement of the case, that R-4, as well as No. 30, when reorganized or as they were prior to 1958, did not include the disputed territory in either district. The disputed territory was a common school district until 1958 when by an election it chose to join R-4. R-4 accepted the territory. That proceeding was evidently conducted under Section 165.300, V.A.M.S. (amended in 1957, see 1959 Pocket Part, p. 42). Adding the territory to No. 30 will not disrupt R-4 as it was originally established. Our ruling is that this proceeding was authorized under Section 165.294.

What we have here said, along with the ruling made by this court in the England case, 330 S.W.2d loc. cit. 743(2) (3), disposes of relator's contention that a substantial portion of territory cannot be taken from one school district and annexed to another under a proceeding authorized by Section 165.294.

■ In the remaining point briefed, relator says that the petition asking for an

election for a change of boundary and the decision of the arbitrators fail to show that a necessity existed for the change. The cases of State ex rel. School Dist. No. 1 v. Denny, 94 Mo.App. 559, 72 S.W. 467, and State ex rel. School District No. 4 v. School District No. 3, 163 Mo.App. 253, 146 S.W. 816, are cited in support of that contention. The question of the sufficiency of the petition was ruled adversely to relator's contention by this court in the England case, 330 S.W.2d loc. cit. 745(12). The petition in question before us was definite and certain in all respects except that it did not use the word "necessary" which is found in the statute. We need not add anything to what was said on this point in the England case.

With reference to the sufficiency of the award, we note that in the case of State ex rel. School Dist. No. 1 v. Denny, supra, a certiorari proceeding, the court in the course of the opinion (72 S.W. loc. cit. 469), stated that the record in the change of boundary proceeding, before the court in that case, did not show that the arbitrators ever met or that a hearing was held, or that they considered the necessity for a change in the boundary. For that reason the award made therein was held to be void. The court concluded by saying, "But there was no finding of any facts by the arbitrators, nor was any fact adjudicated by them; hence there is no valid judgment changing the boundaries of the districts. We do not hold that the finding of the board of arbitration should conform to any particular form, yet we think that it should somewhere and somehow appear from the proceedings that the arbitrators met and considered the matter submitted by the appeal, and that they arrived at a decision."

In State ex rel. School District No. 4 v. School District No. 3, supra, the board of arbitrators in their award stated that the only reason for making a change in boundaries was the board's " 'believing that the change will improve school district No. 3 more than it will injure school district No. 4.' " [163 Mo.App. 253, 146 S.W. 817.]

The court held that such an award did not comply with the requirement of the statute. In the case before us, the award affirmatively shows that the board met and heard arguments as presented by both sides. The award further shows that the board considered the welfare of the children. The board found that the territory could best be served by No. 30; that No. 30 had a high rating scholastically and that geographically the territory involved could best be served by No. 30. If in a proceeding of this nature, there is a substantial compliance with the statute, courts should not interfere. The statute, Section 165.294, specifically declares that "The board shall consider the necessity for the proposed changes and shall decide whether the boundaries shall be changed as requested in the petition or be left unchanged, *which decision shall be final.*" (Emphasis supplied.) The statute is silent as to what constitutes a necessity. The word has been interpreted with various meanings in 65 C.J.S. pp. 270, 271, where it is said of the word "necessity" that "The word 'necessity' does not have a fixed character. It is relative and elastic, rather than absolute, and without any distinct or definite signification. It has varying degrees of meaning which the courts recognize, and may connote different degrees of necessity. Thus it may mean a necessity which is unavoidable, and it may mean a necessity which is merely a matter of convenience, the word being frequently used in connection with other words which increase or diminish the urgency implied. It should be construed with reference to existing conditions."

In the case before us, it is evident that the arbitrators considered the welfare of the school children affected by the change and therefore determined that the change of boundary was necessary in their opinion. In State ex rel. School District No. 4 v. School District No. 3, supra, and in State ex rel. School District No. 1 v. Denny, supra, the court held that the record in those cases did not show that the arbitrators considered the question of necessity. In the case be-

fore us, the award does reveal that the arbitrators considered the question of whether a change of boundary was necessary.

It follows that the prayer for relief should be denied and relator's petition be dismissed. It is so ordered.

All concur.