STATE OF MISSOURI, at the Relation of REORGANIZED SCHOOL DISTRICT No. 4, of Jackson County, Missouri, Relator, v. W. H. HOLMES, State Auditor of Missouri, Respondent, No. 41955—231 S. W. (2d) 185.

Court en Banc, June 13, 1950.

Rehearing Denied, July 10, 1950.

*W. A. Hire, Robert B. Fizzell* and *Stinson, Mag, Thomson, McEvers & Fizzell* for relator.

906

908

*J. E. Taylor,* Attorney General, *Waldo P. Johnson* and *Richard F. Thompson,* Assistant Attorneys General, for respondent.

*D. D. Thomas, Jr.*, and *W. A. Franken,* amici curiae.

*Theodore Beezley,* amicus curiae.

*Stanley P. Clay,* amicus curiae.

912

*Lauf & Bond, H. P. Lauf* and *John O. Bond,* amici curiae.

*Sebree, Shook, Hardy & Hunter, Edgar Shook* and *Elmo B. Hunter,* amicus curiae.

██ TIPTON, J.—This is an original proceeding in mandamus wherein the relator seeks to compel the respondent, as State Auditor of Missouri, to register and certify, under Section 3306, R. S. Mo., 1939, an issue of relator's bonds in the amount of $212,000.

The relator is a reorganized school district formed under the provisions of a statute enacted in 1947. This statute is commonly known as Senate Bill 307 and throughout this opinion it will be referred to as S. B. 307. (Laws of 1947, Vol. 2, pp. 370-377, Mo. R. S. A., Secs. 10449.1-10449.15.) The respondent's return raises several reasons why the statute under which the relator was organized is unconstitutional, and further states that S. B. 307 does not authorize a reorganized school district formed thereunder to incur indebtedness or to vote and issue bonds. For these reasons respondent contends that he has rightfully refused to register and certify these bonds.

██ The first contention of respondent is that S. B. 307 violates Art. III, Sec. 23 of our 1945 Constitution, which provides that "no bill shall contain more than one subject which shall be clearly expressed in its title * * *."

The title to S. B. 307 is as follows:

"AN ACT to repeal Sections 10442, 10444, 10445, 10446, 10447, 10448 and 10449 of Article 4, Chapter 72, Revised Statutes of Missouri, 1939, and to repeal Section 10443 of an Act of the Sixty-third General Assembly found in Laws of Missouri, 1945, Page 1658, approved February 2, 1946, all relating to county reorganization boards, and to enact in lieu thereof a new act creating county boards of education and defining their powers and duties, and providing for the making of plans for the reorganization of school districts, authorizing state aid in construction of school buildings, and providing for free transportation of students under certain circumstances."

The respondent contends in his return that S. B. 307 "embraces more than one subject in that it contains legislation pertaining to the following separate and distinct subjects:

" (1) The creation of county boards of education and prescribing their powers and duties;

" (2) The preparation of a proposition for reorganization by the county board and the submission and approval of the same by the State Board of Education;

" (3) The submission of such proposition at an election;

" (4) The granting of state aid to the reorganized school district."

We think the outline of S. B. 307 just quoted from the respondent's return shows that this act relates to but one subject, namely, reorganized school districts. We have uniformly ruled that where all the provisions of a statute fairly relate to the same subject, have a

natural connection ▉ with it, are the incidents or means of accomplishing it, then the subject is single. Ewing v. Hoblitzelle, 85 Mo. 64; Edwards v. Business Men's Assurance Co., 350 Mo. 666, 168 S. W. 2d 82; State ex rel. Transport Mfg. & Equipment Co. v. Bates, 359 Mo. 1002, 224 S. W. 2d 996.

▉ The respondent also contends the subject of S. B. 307 is not clearly expressed in its title as required by Art. III, Sec. 23, supra.

It is the respondent's contention that the title to the act pertains only to the plans of reorganization of school districts while the act also pertains to the actual reorganization of school districts and, therefore, the title of the act is less comprehensive than the act itself.

In support of this contention the respondent cites State ex rel. City of Chillicothe v. Gordon, 233 Mo. 383, 135 S. W. 929; and State ex rel. St. Louis County v. Gordon, 268 Mo. 713, 188 S. W. 160. The State ex rel. Chillicothe case involved the issuance of bonds for an electric light plant under the provisions of Sec. 3 of an act of the General Assembly, found in the Laws of 1897, page 49. The title to that act purported to specifically enumerate all the powers intended to be granted, and as the words, "to maintain and operate," were not in the title we held that those powers were by necessary implication excluded and that that part of the act that purported to grant power to issue bonds to maintain and operate an electric light plant was unconstitutional because the subject of the act was not clearly expressed in the title of the act. In other words, the title descended into details and particularity and did not refer to the maintenance and operation of the electric light plant.

In the State ex rel. St. Louis County case, supra, a law dealing with county roads passed in 1907, found in Laws of 1907, page 411, was before this Court. The title to the act also descended into details and particularity. "It refers in short only to the manner of getting the money, not the manner of expending same when gotten." 188 S. W. 1. c. 163. While Secs. 4 and 5 dealt in detail with the making of the contract, the building of roads and bridges, the appointment of a special engineer and road builder, designated his duties, etc., we held that the title did not include these items and, therefore, the title to the act was not clearly expressed and that these sections were void.

In State ex rel. Fire District of Lemay v. Smith, 353 Mo. 807, 184 S. W. 2d 593, 1. c. 596, we said:

"Where the title of an act descends to particulars, the particulars stated ordinarily become the subject of the act and the act must conform to the title as expressed by the particulars. Where the title goes into such detail as would reasonably lead to the belief that nothing was included except that which is specified then any matter not specified is not within the title. Any such matter beyond

the title is void because of Section 28, Article IV of the Constitution. Hunt v. Armour & Co., 345 Mo. 677, 136 S. W. 2d 312; Fidelity Adjustment Co. v. Cook, 339 Mo. 45, 95 S. W. 2d 1162; Graves v. Purcell, 337 Mo. 574, 85 S. W. 2d 543.''

However, we are of the opinion that the cases just discussed are not controlling because the title to the act under consideration does not descend to particulars within the scope of the rule announced in these cases.

''In adopting a title the legislature may select its own language, and may use few or many words. It is sufficient that the title fairly embraces the subject-matter covered by the act; mere matters of detail need not be stated in the title.'' State ex rel. Attorney General v. Miller, 100 Mo. 439, l. c. 445-446. If the title is a fair index to all that is embraced in the statute, then it complies with the constitutional mandate that the title clearly express the subject of the bill.

We think the title to the act is general and not particular. Excluding the repealing phrases, it reads, ''* * * all relating to county reorganization boards, and to enact in lieu thereof a new act creating county boards of education and defining their powers and duties, and providing for the making of plans for the reorganization ▆▆▆ of school districts, authorizing state aid in construction of school buildings, and providing for free transportation of students under certain circumstances.'' We think it fairly embraces the subject matter of S. B. 307 which very briefly calls for preparation of a county-wide plan of reorganization, its submission to and approval by the State Board of Education, its submission to the voters of the reorganized districts, and other details mentioned in this bill. In other words, the title includes not only the plans of reorganization of school districts but also the actual reorganization of school districts.

If it can be said that the title does go into detail, they are not such details as would reasonably lead to the belief that nothing was included except that which is specified in the title, but these particulars, if any, ''are merely descriptive of some of the instrumentalities or means to be employed in effectuating the general purpose of the bill as declared in its title, there is no constitutional barrier to the inclusion in the bill of provisions which are germane to and within the scope of the general purpose of the bill as declared in its title and which, although not set forth in the particulars expressed in the title, are not out of harmony with them.'' Graves v. Purcell, 337 Mo. 574, 85 S. W. 2d 543, l. c. 548.

We hold the title to S. B. 307 does not contravene Art. III, Sec. 23 of our present Constitution.

▆▆▆ The respondent contends that S. B. 307 is unconstitutional because it illegally delegates legislative power to county boards of

education and the State Board of Education, in violation of Art. II, Sec. 1 of Art. III and Sec. 1 of Art. IX of our present Constitution.

To properly understand respondent's contention, we think it proper to briefly summarize the provisions of S. B. 307. The first four sections deal with the formation and organization of the county boards of education. Sec. 5 deals with the expenses of the members of county boards of education. Sec. 6 provides for a comprehensive study of each school district by the county board of education, and that "such study shall include

"(a) The assessed tax valuation of each existing district and the differences in such valuation under the proposed reorganization plan;

"(b) The size, geographical features and the boundaries of the proposed enlarged districts;

"(c) The number of pupils attending school, average daily attendance, and the population of the proposed enlarged districts;

"(d) The location and conditions of school buildings and their accessibility to the pupils;

"(e) The location and condition of roads, highways and natural barriers within the county;

"(f) The high school facilities of the county and recommendations for improvement of same;

"(g) The conditions affecting the welfare of the teachers and pupils;

"(h) Any other factors concerning adequate facilities for the pupils."

This section also provides for a specific plan of reorganization of the school districts of the county.

Sec. 7 provides that upon receipt of the plan of reorganization from the county board of education the State Board of Education shall, after an examination of the plan, either approve or disapprove the submitted plan. If the State Board of Education disapproves the plan, then the county board of education shall make a new plan of reorganization; and if the second plan is disapproved by the State Board of Education, then the county board of education is required to submit a plan to the voters of the proposed district without the approval of the State Board, but such proposed district must have an assessed evaluation of at least $500,000 or one hundred pupils in average daily attendance for the preceding year.

The other sections of the act deal with an election to determine whether the voters approve such plan of reorganization; if approved, they provide for another election to elect six directors for each district, the delivery of all property, records, books and papers belonging to such component districts, and state aid for buildings and transportation of pupils.

The respondent does not contend a reorganization school plan law could not be enacted by the Legislature, provided the act prescribed definite standards to guide the county boards or restricted them in preparing plans for reorganization, and also did the same so far as the State Board of Education is concerned. But he does contend that S. B. 307 does not prescribe any standard or restriction either for the county boards in formulating the plans of reorganization or the State Board in approving or rejecting such proposed plans.

- Respondent relies chiefly upon the case of State ex rel. Donaldson v. Hines, 163 Kan. 300, 182 P. 2d 865. The statute under consideration by the Supreme Court of Kansas sought to reorganize the school districts of Kansas and that court ruled that the act delegated legislative powers to county school reorganization committees provided for by that statute, and declared the statute unconstitutional. But that decision is contrary to the decisions in the following cases: Wheeler School District v. Hawley, 18 Wash. 2d 37, 137 P. 2d 1010; School District v. Callahan, 237 Wis. 560, 297 N. W. 407, 135 A. L. R. 1081; and Gardner v. Ginther, 232 App. Div. 296, 250 N. Y. S. 176, 257 N. Y. 578, 178 N. E. 802.

The above cases considered statutes similar to the statute now under consideration.

Sec. 1 of Art. VI of the Kansas Constitution provides: "The state superintendent of public instruction shall have the general supervision of the common-school funds and educational interests of the state, and perform such other duties as may be prescribed by law."

In the Donaldson case, supra, that court said (182 P. 2d l. c. 869):

"In construing the above-quoted section of the constitution this court has held that the legislature can confer legislative power upon the state superintendent of public instruction because the constitution 'specifically authorized him "to perform such other duties as may be prescribed by law," without limiting those duties to such as might be classified as executive or administrative only.' See State ex rel. Rosenstahl v. Storey, supra."

Art. IX, Sec. 2 of our Constitution also provides that the State Board of Education "shall have such other powers and duties as may be prescribed by law," and if the duties conferred on the State Board of Education are legislative in character, then under the Donaldson case, supra, this is not an illegal delegation of legislative power to that Board.

Art. II of the present Constitution divides the power of government into the legislative, executive and judicial departments and provides that no person or collection of persons charged with the exercise of power properly belonging to one of those departments shall exercise any power properly belonging to either of the others, "*except in the instances in this Constitution expressly directed or permitted.*" (Italics

ours.) The legislative power is vested in a senate and house of representatives by Art. III, Sec. 1. Since the State Board of Education is a constitutional board with duties defined by the Constitution and "shall have other powers and duties as may be prescribed by law," it follows that the state legislature can confer on that board duties that are legislative in character as distinguished from those classified as executive or administrative only. Such duties would come within the exception of Art. II of the Constitution.

Under S. B. 307 no school district can be organized without first having the approval of the State Board of Education except when that board has previously twice disapproved the plan of reorganization, and then, in that instance, the act does set up a definite standard to guide the county board of education. That standard is that the proposed reorganized district shall have an assessed evaluation of at least $500,000 or one hundred pupils in average daily attendance for the preceding year.

 Art. IX, Sec. 1 of our Constitution says that "the general assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years," but it does not require the General Assembly to divide the state into school districts. The manner of their formation is not regulated by the Constitution. "The fixing of boundaries of a school district is a local affair which may be left to the will of the people under a general law providing for the creation of school districts throughout the state." Consolidated School District v. Dacus, 189 Okla. 400, 117 P. 2d 508, l. c. 510. "No one would contend that the Legislature should itself act directly in defining and changing the boundaries of each district in the State, without delegating this to local authorities * * *." State ex rel. School District v. Andrae, 216 Mo. 617, l. c. 631, 116 S. W. 561.

The Legislature has always, as a matter of policy, left to the resident voters the settlement of all questions involving the organization of school districts. The local voters act to determine such questions either through the mode of petitioned elections or by petitions to the appropriate public official or officials clothed by law with the power to annex or detach territory. The resident voters of the particular territory are the delegated agents of the Legislature to administer the enabling legislation, thereby implementing the legislative intent to obey the constitutional mandate of insuring the establishment and maintenance of free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years. People v. Deatherage, 401 Ill. 25, 81 N. E. 2d 581.

We hold that S. B. 307 is not an illegal delegation of legislative power within the meaning of Art. II of the Constitution. The county boards of education who devise the plans for reorganization, the State

Board of Education, a constitutional body who must approve the, plans and the voters of the district are delegated agents of the Legislature to administer this act. This act is not such an exclusive legislative function as may not be delegated to the State Board of Education, county boards of education and the voters of the proposed district. Wheeler School District v. Hawley, supra; Gardner v. Ginther, supra; School District v. Callahan, supra. "This is not deemed or considered a prohibited delegation of legislative powers." State ex rel. School District v. Andrae, supra, Mo. l. c. 630.

█ Respondent further contends that S. B. 307 is unconstitutional under Art. III, Sec. 40, particularly paragraphs 21, 24 and 30, which prohibits any local or special laws affecting school districts. His contention is based upon the fact that this act provides for state aid in the erection of buildings for enlarged school districts formed under its provisions but does not provide for such aid for other school districts similarly situated under some other law. This act applies to all counties and townships in the state, regardless of their population or assessed evaluation. A reorganized school district may be formed anywhere in the state if the terms and conditions prescribed by this act are followed. State ex inf. Wright, Prosecuting Attorney, v. Morgan, 268 Mo. 265, 187 S. W. 54. It is immaterial that school districts organized under other statutes are not given state aid in the construction of the districts' school buildings. Such a fact would not affect the act under review. Its constitutionality must stand or fall by its various provisions. This act does not regulate the building or repairing of the school houses, nor does it regulate the raising of money therefor. It merely grants state aid under the conditions specified in the act. There is no merit in this contention.

█ The next contention of respondent in his brief is that S. B. 307 violates Sec. 2 of Article VIII of our Constitution. This section provides that all citizens of the United States over the age of twenty-one who have resided in the state one year and in the county sixty days shall be entitled to vote at all elections.

S. B. 307 provides that a reorganized district may be composed of territory lying in two counties, and in that event there may be only one voting place. It is for this █ reason that respondent contends Art. VIII, Sec. 2 is violated. It is to be noted that this section does not require that the voter have a polling place at which he can vote in the county of his residence. It deals only with the qualifications of the voter and not the place he may cast his vote.

Under this act, a resident of a proposed reorganized school district who has resided in the county of his residence for the period of time prescribed by the Constitution is entitled to vote on the formation of the reorganized school district whether the voting place is located in the county of his residence or in an adjoining county. Under these conditions, neither is such a voter denied due process of law.

Respondent contends S. B. 307 is not complete and workable, and is not sufficiently definite.

" 'When the language of an act appears on its face to have a meaning, but it is impossible to give it any precise or intelligible application in the circumstances under which it was intended to operate, it is simply void; for if no judicial certainty can be settled upon as to its meaning, courts are not at liberty to supply the deficiency or make the statute certain. But legislation cannot be nullified on the ground of uncertainty, if susceptible of any reasonable construction that will support it.' 26 Am. and Eng. Ency. Law, 2d Ed., 656." Diemer v. Weiss, 343 Mo. 626, 122 S. W. 2d 922, l. c. 923.

It is upon this principle of law that respondent contends that S. B. 307 is void. He states that the county board of education must call an election within the proposed enlarged school district to vote on a plan of reorganization and post notices of election, yet there is nothing in the law stating for what length of time the notices are to be posted.

Section 8 of S. B. 307 provides:

"The notices of such election shall be by written or printed notices, signed by the president and secretary of the county board of education. Such notices shall be posted in at least three public places within each school district affected by the proposal and shall also be published at least two times in at least one newspaper of general circulation in the county or counties affected by said proposed enlarged district, the last published notice not less than six days prior to the date of election."

It is true the act does not state how long prior to the election the notices must be posted but it does say that they must be published at least two times in a newspaper within the county or counties affected by the proposed reorganization and that the last publication shall be not less than six days before the date of election. So this section is reasonably susceptible of the construction that the notices must be posted at least as long as it takes two notices to be published in a newspaper. Therefore, this part of S. B. 307 does not come within the rule announced in the Diemer case, supra.

He also says that this act imposes a duty on the county boards of education to call elections for the purpose of electing directors in the enlarged school districts, yet the act makes no provision for electing directors in the enlarged school districts; nor does it provide any method for nominating candidates for the office and it fails to provide for any notice whatever of the election of directors. The act does provide as to notices of election and as to how the elections shall be held by the incorporation of the methods cited in Art. V, Chap. 72, R. S. Mo., 1939, Secs. 10466-10503; entitled "Laws Applicable to City, Town and Consolidated Schools." This for the reason that Sec. 10 of S. B. 307 provides, "The directors above provided

shall be governed by the laws applicable to six-director school districts," and Art. V, Chap. 72, supra, governs six-director districts.

We have already discussed the method for voting when the district lies in two counties and will not repeat it under this point.

This contention of respondent is without merit.

Respondent further contends that S. B. 307 violates Art. VI, Sec. 2, which reads: "The existing organization of counties shall continue until further provisions applicable thereto shall be provided, as authorized in this Constitution."

The respondent contends that this section applies to a school district as it is a part of the existing organization of the county. This act relates to school districts and not counties. School districts are separate legal entities. School District of Oakland v. School District of Joplin, 340 Mo. 779, 102 S. W. 2d 909. Moreover, the school law of 1913 permitted school districts to be formed with territory lying in two counties. Art. VI, Sec. 2, was not in the 1875 Constitution. It is a new section. Even if it be considered as a county under this provision of the Constitution, it would not violate this section because school districts were permitted to be formed in two counties when this Constitution went into effect.

Respondent's final contention is that S. B. 307 does not authorize issuance of the bonds voted by the relator. It is true that this act does not specifically make any such authorization.

This exact point was before us in the case of State ex rel. Clark v. Gordon, 261 Mo. 631, 1. c. 646, 170 S. W. 892, wherein we said:

"It is finally insisted that the Act of 1913 does not confer authority upon consolidated school districts organized thereunder to issue any bonds whatsoever.

"Literally speaking this insistence is true, but when we take into consideration the fact that the Legislature was dealing with the general education of its citizens and authorized this higher class of instruction, it is apparent that it intended that the general school laws of the State, in so far as applicable, should be read in connection with this class of schools, in order to carry out the general design and intention of the legislative body."

That being true, we must look at the general school laws of the state regarding this subject and read them in connection with this act; and by doing so we find that Sec. 10328, R. S. Mo., 1939, provides for the issuance of bonds for the purpose for which those in controversy are issued.

Under authority of the case of State ex rel. Clark v. Gordon, supra, we hold that relator had authority to issue the bonds in question.

From what we have said, it follows that the peremptory writ of mandamus prayed for should issue. It is so ordered. All concur.