**MISSOURI PACIFIC RAILROAD CO.**
et al., Respondents.

v.

**M. E. MORRIS, Director of Revenue, et al.,**
Appellants.

No. 48538.

Supreme Court of Missouri,

En Banc.

March 13, 1961.

Rehearing Denied April 10, 1961.

Thomas F. Eagleton, Atty. Gen., James E. Conway, Sp. Asst. Atty. Gen., for appellants.

James L. Homire, George E. Bailey, St. Louis, for St. Louis-San Francisco Ry. Co.

George W. Holmes, Gilbert P. Strelinger, St. Louis, for Missouri Pac. R. Co.

John L. Davidson, Jr., Ray T. Sample, Robert E. Simpson, St. Louis, for Wabash R. Co.

DALTON, Judge.

Action for a declaratory judgment as to the validity and construction of the Missouri Compensating Use Tax Law, Secs. 144.600 to 144.745 RSMo 1959, V.A.M.S., hereinafter referred to as the Use Tax Law.

House Bill No. 35, adopted by the General Assembly of this State, effective August 29, 1959, is entitled "An Act to impose a tax for the privilege of storing, using or consuming Tangible personal property within this state, with penalty provisions for violation." This Act, as amended, now appears as Secs. 144.600 to 144.745 RSMo 1959, V.A.M.S. Sec. 144.-610, imposing the tax, in part provides: "(1) A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property purchased on or after the effective date of sections 144.600 to 144.745 in an amount equivalent to two per cent of the sales price of the property. This tax does not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article has become commingled with the general mass of property of this state. (2) Every person storing, using or consuming in this state tangible personal property purchased from a vendor is liable for the tax imposed by this law, and the liability shall not be extinguished until the tax is paid to this state * * *."

Section 144.615 provides a number of specific exemptions from the taxes levied by Sections 144.600 to 144.745. The first six exemptions are not in question here but for a better understanding of the Use Tax Law the second exemption will be set out. It provides exemption for "property, the gross receipts from the sale of which are required to be included in the measure of the tax imposed under the Missouri sales tax law."

Exemptions (7) to (11), inclusive, are as follows:

"(7) Materials, manufactured goods, machinery and parts, which, when used in manufacturing, processing, compounding, fabrication or germination, become an integral part of the new personal property or service resulting from such manufacturing, processing, compounding, fabrication or germination and which new personal property or service is intended to be sold ultimately at retail for final use or consumption;

"(8) Repair materials, replacement parts and equipment not readily obtainable in the state of Missouri purchased for use directly upon, and for the repair and maintenance of motor vehicles, railroad rolling stock or aircraft engaged in interstate or foreign commerce as common carriers of persons or property;

"(9) Machinery and equipment, other than replacements, not readily obtainable in Missouri which are purchased for and used directly in manufacturing, mining, processing or producing a product which is intended to be sold ultimately for final use or consumption;

"(10) Tangible personal property, not readily obtainable in the state of Missouri, which is used exclusively in the manufacturing, processing, modification or assembling of products sold to the United States government or to any agency of the United States government;

"(11) Rental of films, records, or any type of sound or picture transcribing to radio and television broadcasting stations,

directly used for broadcasting purposes * * *."

The plaintiffs are three well-known railroad corporations commonly referred to as the Missouri Pacific, Frisco and Wabash. They are admittedly substantially and adversely affected by the Use Tax Law. It is admitted that vast quantities of materials and supplies are purchased by each of plaintiffs in interstate commerce from vendors without the State of Missouri for use and consumption or storage by plaintiffs within the State of Missouri, or for the manufacture by plaintiffs of items of tangible personalty to be used and consumed by plaintiffs in their business *and not for resale,* all of which items of tangible personal property are shipped to plaintiffs in Missouri from points without the State of Missouri.

The petition is in three counts. Count I seeks a determination that the Use Tax Law is unconstitutional and void in its entirety. Counts II and III are pleaded in the alternative to Count I. Count II alleges that plaintiffs purchase various materials and supplies from time to time which are used and consumed by the plaintiffs directly and proximately in the manufacturing processing or fabrication of plaintiffs' transportation service by railroad, which services are, in turn, sold ultimately to the traveling public or to shippers of commodities in both interstate and intrastate commerce. In this Count plaintiffs pray for a determination that such materials and supplies were within the scope of exemption (7) in Sec. 144.615 of the Use Tax Law. In Count III plaintiffs pray for a declaration by the Court that the Use Tax Law does not by its terms impose the tax upon rental payments paid for bona fide leasing of tangible personal property used or to be used by plaintiffs.

In Count I plaintiffs alleged that defendants had interpreted the Use Tax Law as giving no exemption to materials and supplies purchased by plaintiffs outside the State, for incorporation into railroad cars manufactured for their own use in interstate commerce, but as granting an exemption to manufacturers for materials purchased outside the State and used in producing a product for retail sale in the State, and as granting no exemption for materials, manufactured goods, machinery and parts used and consumed in producing a service, for example railroad fuel oil, where such materials, etc., do not become a part of the service. Other facts concerning defendants' interpretation of the Use Tax Law, as applicable to plaintiffs and others, and plaintiffs' contentions as to the interpretation and validity of the Use Tax Law were fully set out.

The cause was tried upon plaintiffs' motion for judgment on the pleadings in view of the facts alleged in the petition and admitted in defendants' answer. The trial court found the Use Tax Law to be unconstitutional and void in its entirety and entered judgment accordingly. The court in its decree specifically pointed out that it did not pass on Counts II and III relating to the *construction of said enactment* in view of its holding that the law was "unconstitutional in its entirety." We construe the judgment, as entered, to be specially designated by the court as a separate, final appealable judgment on the first count of plaintiffs' petition. Supreme Court Rule 82.06, V.A.M.R. Defendants have appealed from the judgment and both appellants and respondents have briefed only the issue decided by the trial court.

Appellants here contend that the court erred in holding the Use Tax Law unconstitutional and void. They insist that the Act is valid; that it imposes an excise tax; that the Legislature could and did properly classify for excise tax purposes; that the classifications made are lawful and valid; and that the Act does not violate the Commerce Clause of the Federal Constitution or any constitutional provision.

Respondents, on the other hand, insist that the court below correctly adjudged the Use Tax Law, Secs. 144.600 to 144.745 RSMo 1959, V.A.M.S., to be an invalid and unconstitutional enactment, and, therefore,

void in its entirety, because "exemptions (7) through (11) contained in Sec. 144.615 of said law are not based on differences reasonably related to the purposes of the law and thereby establish unreasonable arbitrary and discriminatory classifications in violation of Section 3 of Article X of the Constitution of Missouri, V.A.M.S. (uniformity of taxation clause) and the equal protection of laws and due process provisions of the Federal and State Constitutions."

Respondents further insist that exemption (7) discriminates against the service industries, such as the railroads in that an exemption is granted to manufacturers for materials which are used in producing a product, such as goods intended for sale at retail, but exemption is denied to producers of services, such as plaintiffs for materials and supplies directly and proximately used and consumed in the production of such services, where such materials and supplies do not become an integral part of the service sold.

In Count II of their petition respondents contended that the Director of Revenue had improperly construed exemption (7), and that the General Assembly had intended thereunder to exempt all materials and supplies purchased by a railroad and used or consumed directly and proximately in the production of the transportation service furnished by respondents. Respondents now say that, if the Director of Revenue has improperly construed exemption (7), and if exemption (7) is *applicable to railroads and other service industries similarly situated,* then, of course, "the charge of unconstitutional discrimination levelled against exemption (7) would disappear from this case." However, such is not respondents' contention as to Count I. In Count I of their petition the respondents have proceeded on the theory that the Use Tax Law is, in any event, unconstitutional and void in its entirety, not that if construed in a certain manner it would be unconstitutional and void, hence, since the trial court has held the Act unconstitutional

and void in its entirety, only the constitutionality of the Act is presented for our consideration on this appeal.

Respondents stand upon the proposition that the *purpose* of the Use Tax Law *is solely to complement* the Sales Tax Law, Section 144.010 et seq. They contend that it is not enough to show that the classes excluded from the operation of the Use Tax Law are comprised of taxpayers with characteristics different from those that remain subject to the tax; that appellants must go farther and show that the exclusions are based upon differences that are real and related to the purpose of the law *in complementing the Sales Tax Law;* that when tested by the applicable rules of law none of the exemptions (7) through (11) in Sec. 144.615 serve a public purpose as distinguished from a private interest; and that these exemptions provide invalid classifications.

Respondents insist that, generally speaking, valid exemptions from a Use Tax Law should either (1) exempt subjects that also are exempt from the Sales Tax Law, or (2) seek to avoid double taxation under both the Sales and Use Tax Laws when considered together. They say that exemptions which are uncorrelated with the Sales Tax and operate without regard to considerations of double taxation, depart from these purposes, and pick and choose without reason among taxpayers between whom little or no differences exist and thus create arbitrary and unconstitutional classifications. Respondents further insist that "the public policy that motivated the enactment of the Use Tax Law was, of course, to tax purchasers from out-of-state suppliers in the same amount as would have been imposed had in-state purchases been made"; that exemptions (7) through (11) are void; and that exemption (7) arbitrarily discriminates against service industries in favor of manufacturing industries and further arbitrarily subdivides the service industries.

It will be unnecessary to consider further the respective contentions of the parties with reference to the several exemption

provisions. This Court, in an opinion handed down herewith in the case of Southwestern Bell Telephone Co. v. Morris et al., Mo., 345 S.W.2d 62, has fully considered exemptions (7) and (9) and held exemption (9) invalid, and exemption (7) invalid in part, as follows:

"We think exemption (9) is invalid because instead of protecting the potential of the tax base as established by the Sales Tax Act, it actually invades and, to the extent of its reach, destroys such base. This is obviously so because 'machinery and equipment, other than replacements' which are purchased in this state 'for and used directly in manufacturing, mining, processing or producing a product which is intended to be sold ultimately for final use or consumption' are not exempt under the Sales Tax Act. The exemption of such items from the use tax is not based on differences reasonably related to the purposes of the law, discriminates against similar property purchased locally for the same purposes, and thereby creates an unreasonable, arbitrary and discriminatory classification, in violation of § 3, Art. X of the Constitution, and the equal protection and due process provisions of the Federal and State Constitutions.

"The provisions of (7), insofar as they exempt 'materials, manufactured goods, machinery and parts, which, when used in manufacturing, processing, compounding, fabrication or germination, become an integral part of the *new personal property* * * * resulting from such manufacturing, processing, compounding, fabrication or germination, and which *new personal property* * * * is intended to be sold ultimately at retail for final use or consumption' (becoming thereby taxable under the Sales Tax Act), are unobjectionable, but, ironically, wholly unnecessary to accomplish that purpose. This is because tangible personal property of the type and under the conditions mentioned in that part of said exemption (7) was already exempt by force of the interplay of certain other provisions of the two acts * * *.

 * * * * * *

"Accordingly, the provisions concerned with use of tangible personal property resulting in 'new personal property' from the alternative methods of production specified in exemption (7), insofar as they purport to create or carve out exemptions, may be disregarded for present purposes because, in effect, they merely duplicate the exemption (or, more accurately, exclusion) of such property which already existed by reason of the definitions of terms in, and the operation of, the two acts, as we have just seen.

"What has just been said thus leaves for consideration the provisions of exemption (7) with respect to its 'services' aspect, and by which it was sought to extend shelter from the use tax to those so-called service industries coming within its terms. Under the Sales Tax Act locally purchased tangible personal property used or consumed by telephone companies, railroad and other public utilities, places of amusement, etc., (in fact, all of the divers services subject to the sales tax) in producing their services is subject to the sales tax (except fuel consumed in the circumstances mentioned in § 144.030, par. 2). The 'services' provisions now under examination would exempt from the use tax like property used for the same purposes, if purchased out of state. In so discriminating against locally purchased tangible personal property (subject to the sales tax), contrary to the basic purpose of the act as a whole, this exemption is indistinguishable from exemption (9), and we are therefore compelled to, and do hold it to be unconstitutional and void for precisely the same reasons that exemption (9) was so declared."

As indicated above, this Court has held exemption (9) to be invalid and exemption (7) invalid in part for the reasons therein stated. The reasons stated are equally applicable to exemptions (8) and (10) and hence exemptions (8) and (10) are invalid for the reasons stated in said opinion. However, we think that exemptions (8), (9) and (10) are invalid for a further reason

not considered in the Southwestern Bell Telephone Company case, supra, but which was presented in this case. In each of these exemptions an exemption from the use tax is attempted to be granted where the mentioned property is "not readily obtainable in Missouri."

The Use Tax Law, in Sec. 144.605, subdivision 12, defines "readily obtainable in Missouri" as meaning "manufactured in or kept for sale in Missouri *in the quantity desired* regardless of price or brand." (Italics ours.) We construe this subdivision to mean in the quantity desired by the individual purchaser at the time of purchase.

Respondents contend that the "not readily obtainable in the State of Missouri" conditions contained in exemptions (8), (9) and (10) of Sec. 144.615 of the Use Tax Law "are obnoxious both because implicit in them are discriminatory features and also because they are so vague and unworkable as to make the law void and unconstitutional." Respondents say that the mentioned "proviso in exemptions (8), (9) and (10) * * * creates situations of unconstitutional discrimination between members of a logical class"; that by this device the General Assembly was apparently attempting to protect home industry; and that, "however understandable the legislative purpose, the effect of this device is to render the exemptions in question so vague, indefinite and uncertain that the Use Tax Law cannot be executed and under such circumstances the statute must be declared inoperative and void."

Appellants admit that, as interpreted by the rules published by the defendants, an item is readily obtainable in Missouri "if articles of a substantially equal grade or competitive class are manufactured or kept for sale in Missouri" and that the "combined capacity of Missouri suppliers and manufacturers is to be controlling where a question of quantity is involved." Rule G (8) (b), Rules and Regulations issued by the Department of Revenue. Respondents insist that this rule only tends to demonstrate the utter impossibility of any certain

compliance with these exemption provisions of the Use Tax Law. The criticism is not without merit.

The applicable rules of law for determining whether a statute is vague, indefinite and uncertain and for that reason invalid are well stated by this Court in Diemer v. Weiss, 343 Mo. 626, 122 S.W.2d 922, 923, as follows:

■ " 'When the language of an act appears on its face to have a meaning, but it is impossible to give it any precise or intelligible application in the circumstances under which it was intended to operate, it is simply void; for if no judicial certainty can be settled upon as to its meaning, courts are not at liberty to supply the deficiency or make the statute certain. But legislation cannot be nullified on the ground of uncertainty, if susceptible of any reasonable construction that will support it.' 26 Am. and Eng.Ency.Law, 2d Ed., 656.

■ " 'Where the statutory terms are of such uncertain meaning, or so confused, that the courts cannot discern with reasonable certainty what is intended, they will pronounce the enactment void.' Statutory Crimes, 3d Ed., in the third subdivision of section 41. * * *

" 'It is equally true that a mere collection of words can not constitute a law; otherwise the dictionary can be transformed into a statute by the proper legislative formula. An act of the legislature, to be enforceable as a law, must prescribe a rule of action, and such rule must be intelligibly expressed.' State ex inf. Crow v. West Side Street Ry. Co., 146 Mo. 155, loc. cit. 167–168, 47 S.W. 959, loc. cit. 961."

In the case of State ex rel. Wyatt v. Ashbrook, 154 Mo. 375, 55 S.W. 627, 631, 48 L.R.A. 265, this Court said: "In the exercise of the taxing power, which is the very essence of sovereignty, and of the gravest consequences to the citizen, there ought to be no ambiguity or uncertainty in the language of the law."

Appellants insist that, while the taxability of certain items under the mentioned subdivisions of Sec. 144.615 turns upon the factual issues as to whether said items are "readily obtainable in Missouri"; such factual issues are not sufficiently complicated to defeat the said exemptions or make the Use Tax Law void. Appellants further insist that the court cannot find these subsections of Sec. 144.615 to be unconstitutional and void for vagueness, since the provisions exempting certain goods "not readily obtainable in Missouri", are subject to a reasonable interpretation and were obviously placed there by the Legislature to take away the temptation for persons to buy outside the State, tax free, those things which are readily obtainable within this State. Appellants further insist that said provisions are not vague, indefinite and unworkable, but are very fair provisions based on proper legislative considerations.

We can conceive of no reasonable construction or interpretation of the words "not readily obtainable in Missouri", as used in subsections (8), (9) and (10) by which either a taxpayer, or a State officer charged with the enforcement of the Act or the collection of the tax, could determine applicability of any of these subsections to the mentioned particular property at any particular date or on any succeeding date with any degree of certainty in innumerable instances. Determination of tax liability at any particular time would impose an impossible and an undue burden on any purchaser or enforcing officer. The interpretation of the words "not readily obtainable in Missouri", as sought to be made by appellants does not aid us. How would either a taxpayer or an official of the State go about determining the "combined capacity of Missouri suppliers and manufacturers" as to the specific quantity of any particular article obtainable on any day or succeeding day? How would a taxpayer determine whether or not the "combined capacity of Missouri suppliers and manufacturers" as to quantity had not been exhausted within the hour prior to his purchase of a commodity from without the State? To what extent would a purchaser have to canvass suppliers and manufacturers within the State in order to determine whether *a desired quantity* of an item could be purchased out of the State and free from use tax? Whether or not an item mentioned in any of these three subsections was taxable or nontaxable might vary from day to day and even hour to hour dependent upon the number of purchasers and the amount of their purchases. If 100 units of any of these commodities were available in this State on a certain day and 100 small purchasers purchased 10 units each from outside the State would each purchase be taxable, or if one purchaser wanted 1,000 units and purchased this quantity outside the State would all of it be taxable or tax free? How would any of these purchasers or the tax officials determine which of the outstate small purchases were subject to tax, or exempt therefrom? In many instances if we assume that a prospective purchaser could at any time and place in the State in fact determine whether or not any of the items mentioned in any one of these subdivisions was readily obtainable in Missouri in the quantity desired, nevertheless liability for the tax would be avoidable by a purchaser by merely buying a larger quantity than the quantity then readily obtainable at the particular time, and so avoidance of the tax would be at the election of the purchaser.

Appellants urge that the existence of a comparable "not readily obtainable" provision in the Iowa statutes evidences the fact that provisions of this nature do not render the law incapable of administration and enforcement. Respondents say the clause has been the subject of three Iowa Supreme Court cases plus an unknown number of administrative appeals and lower court decisions. They point to the existence of this mass of litigation in and of itself as evidencing the unworkability of exemptions conditioned upon the nonavailability of property within the taxing state. Appellants admit that, while the Iowa courts have

interpreted the Iowa statute a number of times, this particular provision has not been attacked on constitutional grounds. See Iowa Code, Sec. 423.1, I.C.A. Peoples' Gas & Electric Co. v. State Tax Commission, 238 Iowa 1369, 28 N.W.2d 799; Dain Manufacturing Co. of Iowa v. Iowa State Tax Comm., 237 Iowa 531, 22 N.W.2d 786; City of Ames, Iowa, v. State Tax Comm., 246 Iowa 1016, 71 N.W.2d 15. Also see State Tax Commission's definition of "readily obtainable in Iowa", [238 Iowa 1369, 28 N.W.2d 805] as approved in Peoples' Gas & Electric Co. case, supra, and set out in Vol. 36 Words and Phrases, 1960 Pocket Part.

In the City of Ames case, supra, the court recognized the indefiniteness of the Iowa statute, as follows: "The commission urges that if it be held to be the rule that the question of 'readily obtainable' is to be decided as of the time of delivery in Iowa, the citizen might find that property not obtainable at the time of the purchase order would be obtainable when it was delivered, and so find a tax imposed not contemplated when the goods were bought. This is true; but it does not change the law." 71 N.W. 2d 15, 20.

In Continental Supply Co. v. People, 54 Wyo. 185, 88 P.2d 488, 490, 129 A.L.R. 217, a provision of the Wyoming Use Tax Act, Laws 1937, c. 118, exempting machinery, equipment and industrial materials used in mining, when such machinery, equipment and materials were not generally stocked in the State for sale or were not "promptly purchasable in Wyoming" from or through a regularly established Wyoming retailer registered under the Act, was construed as not exempting property purchased from a retailer in Wyoming, in the regular, ordinary course of trade, even though such property was not kept in stock there, but on directions from the retailer was shipped directly from a dealer or manufacturer in another state to the Wyoming purchaser. The court reasoned that the words "promptly purchasable in Wyoming" obviously did not mean "then and there" obtainable in Wyoming since if the goods were then and there obtainable in Wyoming the purchaser would have to pay the sales tax thereon. In that case the provision of the Use Tax Law requiring retailers having a place of business in the State and making sales of property for storage, use or other consumption in the State to collect the tax from the purchaser and directing that the tax be collected "at the time of making such sales" was separable from the other provisions of the Act so that its invalidity as applied to sales of goods ordered from outside the State did not affect the validity of the rest of the Act.

The Use Tax Law is, of course, intended to be uniform and applicable throughout the entire State including the two great cities of St. Louis and Kansas City as well as the rural area of the State, which area is miles in extent from the northwest corner to the southeast as well as otherwise east to west and north to south. The Use Tax Law must further comply with the constitutional provisions as to equal protection, due process and uniformity of taxation upon the same class of subjects. While the mentioned words of the proviso, "not readily obtainable in Missouri", is in language that on its face appears to have a meaning, we think it impossible to give it any precise or intelligent meaning or application in the circumstances under which the Act was intended to operate. This Court cannot supply the deficiency, remedy the uncertainty and give the exception or proviso a precise and definite meaning so that all to whom it was intended to apply would be able at any particular time and place to determine its application. See State ex rel. Reorganized School Dist. No. 4 of Jackson County v. Holmes, 360 Mo. 904, 231 S.W.2d 185, 192. The words used cannot be construed to meet the constitutional objections levelled against them. In such circumstances the mentioned words must be considered void because vague, indefinite and uncertain in meaning and application, unworkable and arbitrary. They would impose an impossible burden

on taxpayers and officials to determine applicability at any particular time and place.

 It is evident, however, that the mentioned words, "not readily obtainable in Missouri", as used in exemptions (8), (9) and (10), even though void for indefiniteness and uncertainty, do show an intention to limit the scope of each of these exemptions and, while the limitation in each is so vague, indefinite and uncertain that it may not be put into effect, it is nevertheless apparent that there is no expressed intention on the part of the Legislature to put these exemptions into effect without such a limitation. To do so would materially extend the exemptions, and accordingly reduce the scope intended to be covered by the use tax. It, therefore, follows that exemptions (8), (9) and (10) cannot be given effect either in the form written or with the "not readily obtainable in Missouri" clause omitted. The result is that each of these exemptions are invalid for reasons additional to those stated in the Southwestern Bell Telephone case.

Respondents further insist that exemption (11) is probably the clearest example of the arbitrary splitting of a natural class without reason or justification, since under this provision, "Rental of films, records, or any type of sound or picture transcribing to radio and television broadcasting stations, directly used for broadcasting purposes" are exempted from the use tax; but such exemption is not granted in the case of amounts paid for the use of identical property by owners or operators of moving picture theaters. Respondents concede that they do not own or operate motion picture theaters, but insist that they "are directly affected by the constitutional status of the exemption provisions as a whole, including exemption (11)"; that every exemption from the Use Tax Law has "the effect of increasing the proportionate burden of taxation borne by these respondents"; and that, as taxpayers, they have a legal right to contest the validity of each exemption and the law in its entirety. Respondents have not sued here as representatives of a class or on behalf of all other taxpayers similarly situated, but only by reason of being themselves subject to the use tax.

 It is well settled that only such persons as are in some way prejudiced by an unconstitutional law can complain of it. State ex rel. State Board of Mediation v. Pigg, 362 Mo. 798, 244 S.W.2d 75, 78; Miller v. Police Retirement System of City of St. Louis, Mo.Sup., 296 S.W.2d 78; 16 C.J.S. Constitutional Law § 80, p. 248. Respondents are not directly affected by the discrimination, if any, against motion picture theater owners or operators by reason of exemption (11) and may not complain thereof.

We now reach the question of whether or not the Use Tax Law is severable to such a degree that after having found exemptions (8), (9) and (10) and a part of exemption (7) void this Court can nevertheless find the remaining provisions valid or whether the Use Tax Law is void in its entirety. Respondents insist that, in spite of the severability clause (Section 31 of House Bill No. 35, Laws of Missouri 1959), exemptions (7) through (11) of Sec. 144.615 are not severable from the balance of the Compensating Use Tax Law. Respondents say the exemptions are so connected with the residue of the statute as to furnish the consideration therefor and that the General Assembly would not have passed the balance of the Act without said exemptions. Respondents further contend that "the purported severability clause in the Use Tax Act constitutes an unconstitutional delegation of power by the General Assembly to the Judiciary to rewrite the law."

We agree that the invalid exemptions render the entire Act void unless saved by the severability clause. The severability clause of House Bill No. 35, enacting the Use Tax Law, appears as Section 31 of the Act as finally agreed to and passed. It provides:

"If any provision of this act, including any provision exempting the use of prop-

erty from the tax imposed by this act other than section 4 hereof, is found to be unconstitutional the remaining provisions are to be treated as being in full force and effect. The legislature hereby declares that, if any exemption of the use of property from taxation contained in this act is invalid under the constitution, it intended to and does hereby impose the same tax on such exempted use as is imposed on the use of all other property made subject to the tax imposed by this act." And see Sec. 1.140 RSMo 1959, V.A.M.S., governing severability.

Respondents insist that should the Court in this litigation determine that one or more of the exemptions are unconstitutional, the obvious effect would be to give to the Use Tax Law a scope broader than that intended by the General Assembly and that in such a case the whole Act must be deemed void.

Respondents rely upon 82 C.J.S. Statutes § 93, pp. 160–161, as follows: "Where, by striking a void exception, proviso, or other restrictive clause, the remainder will be given a broader scope, as to subject or territory, than that intended by the Legislature, the whole act is void; and it has been declared that ordinarily elision will not be sanctioned if the section of the act which the court is asked to cut out is in the nature of an exception or an exemption. Where the excepting proviso of an enactment is found unconstitutional, the substantive provisions which it qualifies cannot stand." See also State ex rel. Fire District of Lemay v. Smith, 353 Mo. 807, 184 S.W.2d 593, 596; Preisler v. Calcaterra, 362 Mo. 662, 243 S.W.2d 62 and State ex rel. Transport Mfg. & Equipment Co. v. Bates, 359 Mo. 1002, 224 S.W.2d 996.

In the Bates case, supra, the Court said: "If the invalid portion is so connected with the residue of the statute as to furnish the consideration for the enactment of the residue and as to warrant the belief that they were intended as a whole and that the Legislature would not have passed the part remaining had it known the other

part would be held invalid, then the entire act must fall. * * * The courts have no power by construction to extend the scope of a taxing statute and make it applicable to those to whom the General Assembly never intended it should apply, thus taxing those whom the Legislature said shall not be taxed." 224 S.W.2d 996, 1001.

Respondents insist that "it is clear that the General Assembly would not have enacted the Use Tax Law without the exemptions here challenged." Respondents further argue that the General Assembly cannot, by broad, sweeping terms in a "severability clause" of a taxing statute, indicate that it has exempted numerous items and taxpayers from the tax, and then endeavor to empower the courts to rewrite the taxing statute so as to make all the subjects and taxpayers intended to be exempt from the tax subject to the tax.

We do not consider the Act incomplete or incapable of administration and enforcement by reason of the exemptions hereinbefore held void in whole or in part. The question presented is as to legislative intent. By the Statute, Sec. 1.140 RSMo 1959, V.A.M.S., the Act is valid, regardless of invalid provisions, unless the Court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the Legislature would have enacted the valid provisions without the void one; or unless the Court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

In this case the Legislature has dealt with the specific matter of invalid exemptions when it expressly declared that if any exemption of the use of property from taxation contained in this Act is invalid under the Constitution, it intended to and does hereby impose the same tax on such exempted use as is imposed on the use of all other property made subject to the tax imposed by this Act.

We must and do, therefore, find that the Legislature did intend to do exactly what it stated that it intended to do in the severability clause. The Act is, therefore, valid except for the invalid provisions. The valid provisions are not so essentially and inseparably connected with and dependent upon the void provisions that it cannot be presumed the Legislature would have enacted the valid provisions without the void ones. The valid provisions standing alone are complete and capable of being executed in accordance with the legislative intent and may be given effect.

The judgment of the trial court is reversed, and the cause remanded with directions to enter judgment in favor of appellants in conformity with the views herein expressed.

All concur.